**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DEBORAH BAUER-ROBERTSON, RENEE
GALLOWAY, CONSTANCE HOLLANDS,
JAMES JOHNSON, VEDA JOHNSON, CRAIG
MILLER, MELODY MOBLEY, BRENARD
REEL, TYNISA RICHARDSON, LLOYD RYAN,
PATRICK SELIG, MELISSA SMITH, DONNIE
SOUTHERS, JIMMY TURPIN, and VTESSA
WATSON, *on behalf of themselves and all others
similarly situated,*

                  Plaintiffs,

v.

                                                   Civil Action No. 3:20-cv-00551

SHIVA FINANCE, LLC,
d/b/a Advance Financial 24/7

and

HARPETH FINANCIAL SERVICES, LLC,

                  Defendants.

## CLASS ACTION COMPLAINT

COME NOW, the Plaintiffs, Deborah Bauer-Robertson ("Ms. Bauer-Robertson), Renee

Galloway ("Ms. Galloway"), Constance Hollands ("Ms. Hollands"), James Johnson ("Mr.

Johnson"), Veda Johnson ("Ms. Johnson"), Craig Miller ("Mr. Miller"), Melody Mobley ("Ms.

Mobley"), Brenard Reel ("Mr. Reel"), Tynisa Richardson ("Ms. Richardson"), Lloyd Ryan ("Mr.

Ryan"), Patrick Selig ("Mr. Selig"), Melissa Smith ("Ms. Smith"), Donnie Southers ("Mr.

Southers"), Jimmy Turpin ("Mr. Turpin"), and Vtessa Watson ("Ms. Watson") (hereafter

collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by counsel, and as for their Complaint against Defendants, they allege as follows:

## PRELIMINARY STATEMENT

1.      This is a consumer class action brought for willful violations of federal and state consumer protection statutes, as well as fraud and conversion.

2.      Plaintiffs allege class claims against Defendants for a number of violations of federal and state law, including: (1) misrepresentation of an agreement to arbitrate disputes and (2) violation of this agreement by suing consumers in Virginia courts, (3) conditioning extensions of credit upon authorizing electronic debits, (4) failure to disclose information required under federal law when offering credit, (5) making harassing phone calls using an automatic telephone dialing system (ATDS), (6) unauthorized electronic withdrawals from consumer bank accounts, and (7) making usurious loans. Defendants' standard business practice was to use a mandatory arbitration clause as a means to keep people from taking legal action against it while at the same time defendants secretly never intended to be bound by the terms of the arbitration clause and instead knew  they would file lawsuits when they believed they had a claims against its consumers.

3.      Defendant Shiva Finance, LLC, doing business as Advance Financial 24/7, (hereafter "Shiva") makes high interest loans to consumers in Virginia, charging consumers 360% in annual interest.

4.      Defendant Harpeth Financial Services, LLC (hereafter "Harpeth") owns the Advance Financial 24/7 service mark.

5.      Shiva requires all Virginia consumers to sign a binding arbitration agreement that states both parties will only bring disputes in arbitration, unless such claims are brought in small claims court.

6.      As a practical matter, Shiva cannot bring claims in small claims court in Virginia.

7.      Despite this agreement, Shiva routinely files lawsuits against consumers who fall behind on their loans, oftentimes obtaining judgments and then garnishments against these consumers.

8.      Shiva uses its arbitration clause as a claims suppression devise to evade liability from consumer protection laws while simultaneously using the Virginia courts to collect on outstanding debt.

9.      Shiva also masquerades its high-interest predatory loans as open-ended credit in an effort to evade Virginia usury laws.

10.     When Shiva is unable to collect money from consumers, it employs high pressure collection tactics, including frequent robocalls, even after consumers tell Shiva to stop contacting them.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action because it arises between Plaintiffs, citizens of Virginia, and Defendants, citizens of Delaware. 28 U.S.C. § 1332(a). There is more than $75,000 in controversy as Plaintiffs are each asserting punitive damages claims of $350,000.

12.     Plaintiffs bring their Fraud claims on behalf of putative Classes as defined below. The Court has jurisdiction over such action pursuant to the 28 U.S.C. § 1332(d)(2) as: (1) There are at least 100 consumers in Virginia who have been sued and/or have had a judgment obtained against them by Defendants during the class period; (2) those consumers each have a punitive damages claim of $350,000 for Defendants' fraudulent use of an arbitration clause in its form contract; and (3) those Virginias are all diverse as to Delaware-domiciled Defendants.  On a class basis, these Fraud Claims involve an amount in excess of $5,000,000. 28 U.S.C. § 1332(e)(2).

13.     This Court also has jurisdiction pursuant to 15 U.S.C. § 1693m(g), 15 U.S.C. § 1640(e), 12 U.S.C. § 3416, 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1367.

14.     Plaintiffs bring their Virginia Consumer Protection Act (VCPA) and Virginia Telephone Privacy Protection Act (VTPPA) claims on behalf of putative Classes as defined below. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as these claims form part of the same controversy as the claims above.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of Defendants' violative conduct occurred in the Richmond Division of this Court. All plaintiffs reside in Virginia, nearly all plaintiffs are residents of this District and a number of them reside within this Division.

## PARTIES

16.     Ms. Bauer-Robertson is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

17.     Ms. Galloway is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

18.     Ms. Hollands is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

19.     Mr. Johnson is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. He resides within this District.

20.     Ms. Johnson is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and VTPPA. She resides within this District and Division.

21.     Mr. Miller is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. He resides within this District

22.     Ms. Mobley is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

23.     Mr. Reel is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and VTPPA. He resides within this District and Division.

24.     Ms. Richardson is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

25.     Mr. Ryan is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. He resides within this District.

26.     Mr. Selig is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. He resides within this District and Division.

27.     Ms. Smith is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District.

28.     Mr. Southers is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA.

29.     Mr. Turpin is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. He resides within this District and Division.

30.     Ms. Watson is a natural person, Virginia resident, and a consumer protected by the TCPA, the VCPA and the VTPPA. She resides within this District and Division.

31.     Shiva is a Delaware limited liability company with its principal office located at 100 Oceanside Drive, Nashville, TN 37204.  Its registered agent is Registered Agents Inc., 4445 Corporation Lane, Suite 264, Virginia Beach, VA 23462.  At all times relevant to this Complaint, Shiva was in the business of providing services to consumers, and Plaintiff's loans from Shiva

were for their personal, household use. Shiva is a financial institution as defined under 12 U.S.C. § 3401(1).

32.     Harpeth is a Delaware limited liability company with its principal address located at 100 Oceanside Drive, Nashville, TN 37204-2351. It is not registered to do business in Virginia. Its registered agent in Delaware is Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, DE 19958.

## STATEMENT OF FACTS

### Facts Common to All Plaintiffs

33.     Shiva is an internet lender who charges 360% annual interest on the credit it extends.

34.     In its transactions in Virginia, Shiva does business as "Advance Financial 24/7."

35.     Harpeth owns the service mark "Advance Financial 24/7."

36.     Shiva and Harpeth share the same principal office, at 100 Oceanside Drive, Nashville, TN 37204.

37.     For the facts alleged in this Complaint, Shiva and Harpeth were a joint enterprise.

38.     As part of its standard credit-granting process, Shiva uses a standard form credit contract in Virginia (the "Contract").

39.     In the Contract, there is an arbitration clause which effectively states that all disputes concerning the credit agreement are to be handled in arbitration and that both Shiva and its borrowers waive their right to pursue a lawsuit in any court other than small claims court.

40.     Due to the procedural rules of the Supreme Court of Virginia, Shiva is not permitted to file lawsuits in small claims courts in Virginia.

41.     Shiva and its affiliated entities have sought to suppress consumer protection claims against them by compelling arbitration using an arbitration clause when consumers have raised claims against Shiva and its affiliates for violation of consumer protection laws.

42.     However, Shiva sues consumers in General District Court in Virginia when it seeks to collect on allegedly unpaid balances of its loans.

### Plaintiff Ms. Bauer-Robertson's Experience

43.     On or around February 15, 2018, Ms. Bauer-Robertson took out a loan with Shiva for approximately $1,154.

44.     In addition to charging Ms. Bauer-Robertson 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Ms. Bauer-Robertson agreed to submit "All Disputes" to either arbitration or small claims court.

45.     Despite this purported agreement to arbitrate, Shiva filed a Warrant in Debt against Ms. Bauer-Robertson on or around March 6, 2020 in James City General District Court for an alleged breach of the loan agreement.

46.     Based on information and belief, the loan agreement that Shiva filed along with its Warrant in Debt was not the same agreement that Ms. Bauer-Robertson entered into with Shiva. More specifically, the agreement filed with the James City General District Court contained a modified arbitration provision that purportedly allows the parties to bring claims in Virginia General District Courts, whereas the actual Agreement that Ms. Bauer-Robertson signed did not allow claims to be brought in Virginia General District Courts.

### Plaintiff Ms. Galloway's Experience

47.     On or around December 13, 2018, Ms. Galloway took out a loan with Shiva.

48.     At the time that Ms. Galloway took out the loan, she resided in Richmond, Virginia.

49.     Based on information and belief, Shiva charged Ms. Galloway 360% APR for this loan.

50.     Based on information and belief, Shiva required Ms. Galloway to agree to binding arbitration in which both parties agreed to submit all disputes to either small claims court or arbitration.

51.     Based on information and belief, Ms. Galloway only ever received one disbursal of funds from Shiva for this loan.

### Plaintiff Ms. Holland's Experience

52.     Ms. Hollands registered her cell phone number with the National Do Not Call Registry in approximately 2012.

53.     On or around June 12, 2018, Ms. Hollands took out a loan with Shiva for approximately $371.

54.     The interest rate on this loan was 360% APR.

55.     Ms. Hollands made payments to pay off the loan but was unable to keep up with the high interest rate.

56.     In February 2020, Ms. Hollands received phone calls to her cell phone in which the caller identified himself or herself with Shiva.

57.     During these calls, Ms. Hollands told the caller to stop contacting her.

58.     Also during these calls, the caller told Ms. Hollands that the calls would not stop but would continue.

59.     At least some of these calls started with a recorded message or a long pause.

### Plaintiff Mr. Johnson's Experience

60.     On or around May 11, 2019, Mr. Johnson took out a loan with Shiva for approximately $1,151.

61.     Under this loan, Shiva charged Mr. Johnson 360% APR.

62.     The loan agreement stated that there was a grace period "as designated on [Mr. Johnson's] period billing statement" and if Mr. Johnson paid within this grace period, then he would not be charged interest.

**63.**     Shiva then sent subsequent periodic billing statements to Mr. Johnson in which it stated that there was in fact no grace period on his loan and that "interest and fees will be charged every day you keep the money."

### Plaintiff Ms. Johnson's Experience

64.     On or around November 4, 2017, Ms. Johnson took out a loan with Shiva for approximately $376.

65.     Based on information and belief, in addition to charging Ms. Johnson 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Ms. Johnson agreed to submit "All Disputes" to either arbitration or small claims court.

66.     On or around November 2, 2018, Shiva then sued Ms. Johnson in Richmond General District Court for an alleged breach of the loan agreement, despite its agreement to arbitrate all disputes.

67.     Ms. Johnson did not receive proper notice of this lawsuit.

68.     Medical complications that required Ms. Johnson to be hospitalized prevented her from attending court on the return date for this lawsuit.

69.     On or around January 8, 2018, Shiva obtained a default judgment against Ms. Johnson in Richmond General District Court.

70.     On or around June 11, 2019, Shiva initiated garnishment proceedings against Ms. Johnson to collect on the aforementioned default judgment.

### Plaintiff Mr. Miller's Experience

71.     On or around December July 23, 2018, Mr. Miller took out a loan with Shiva for approximately $1,489.

72.     In addition to charging Mr. Miller 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Miller agreed to submit "All Disputes" to either arbitration or small claims court.

73.     Despite this purported agreement to arbitrate, Shiva filed a Warrant in Debt against Mr. Miller on or around December 16, 2019 in Loudoun General District Court for an alleged breach of the loan agreement.

### Plaintiff Ms. Mobley's Experience

74.     On or around December July 3, 2019, Ms. Mobley took out a loan with Shiva for approximately $1,298.00.

75.     In addition to charging Ms. Mobley 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Ms. Mobley agreed to submit "All Disputes" to either arbitration or small claims court.

### Plaintiff Mr. Reel's Experience

76.     On or around December July 7, 2018, Mr. Reel took out a loan with Shiva for approximately $1,298.00.

77.     In addition to charging Mr. Reel 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Reel agreed to submit "All Disputes" to either arbitration or small claims court.

78.     Mr. Reel only ever received one disbursal of funds from Shiva on this loan.

79.     Mr. Reel told Shiva repeatedly to stop electronically debiting his bank account.

80.     Despite Mr. Reel's requests, Shiva refused to stop electronically debiting Mr. Reel's bank account.

81.     Due to these unauthorized debits, Mr. Reel was forced to close his bank account.

82.     On or around June 15, 2020, Shiva then sued Mr. Reel in Richmond General District Court for an alleged breach of the loan agreement, despite its agreement to arbitrate all disputes.

83.     In its lawsuit against Mr. Reel, Shiva included both the original arbitration agreement and a second arbitration agreement which claimed that both parties could bring lawsuits in Virginia General District Courts.

84.     Prior to the filing of this lawsuit, Mr. Reel had never received notice of this second arbitration agreement, nor had he ever agreed to it.

**Plaintiff Ms. Richardson's Experience**

85.     On or around January 1, 2018, Ms. Richardson took out a loan with Shiva for approximately $590.

86.     In addition to charging Ms. Richardson 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Ms. Richardson agreed to submit "All Disputes" to either arbitration or small claims court.

87.     Despite this purported agreement to arbitrate, Shiva filed a Warrant in Debt against Ms. Richardson on or around December 11, 2019 in Newport News General District Court for an alleged breach of the loan agreement.

88.     On January 22, 2020, Shiva sent Ms. Richardson an email stating that it was changing the terms of the arbitration clause to allow Defendants to sue Ms. Richardson in General District Court.

89.     After Ms. Richardson received this email, she did not receive any more funds from Defendants.

**Plaintiff Mr. Ryan's Experience**

90.     On or around January 20, 2018, Mr. Ryan took out a loan with Shiva for approximately $1,512.

91.     Based on information and belief, in addition to charging Mr. Ryan 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Ryan agreed to submit "All Disputes" to either arbitration or small claims court.

92.     Despite this purported agreement to arbitrate, Shiva filed a Warrant in Debt against Mr. Ryan on or around January 28, 2019 in Fairfax County General District Court for an alleged breach of the loan agreement.

93.     Shiva then obtained a default judgment against Mr. Ryan for this Warrant in Debt on March 14, 2019.

94.     Mr. Ryan had no knowledge of this lawsuit until he received a notice from his bank regarding a garnishment in or around March 2020.

**Plaintiff Mr.  Selig's Experience**

95.     On or around February 10, 2018, Mr. Selig took out a loan with Shiva for approximately $1,092.

96.     In addition to charging Mr. Selig 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Selig agreed to submit "All Disputes" to either arbitration or small claims court.

97.     On or around November 2, 2018, Shiva then sued Mr. Selig in Richmond General District Court for an alleged breach of the loan agreement, despite its agreement to arbitrate all disputes.

98.     Mr. Selig was forced to seek counsel and take other appropriate actions in order to defend himself against this lawsuit.

**Plaintiff Ms. Smith's Experience**

99.     On or around July 8, 2019, Ms. Smith took out a loan with Shiva for $303.

100.    In addition to charging Ms. Smith 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Selig agreed to submit "All Disputes" to either arbitration or small claims court.

101.    While Ms. Smith made payments on the loan, she was not able to keep up with payments on the loan due to the high interest rate.

102.    Starting in February 2020, Ms. Smith began to receive phone calls in which the caller identified himself or herself with Shiva.

103.    Ms. Smith has repeatedly told the callers to stop contacting her.

104.    The callers used different numbers to call Ms. Smith so she couldn't tell that the calls were coming from Shiva.

105.    Ms. Smith has received such calls at unreasonable times, such as at 2 am and 5 am.

106.    Ms. Smith registered her phone number with the National Do Not Call Registry on May 27, 2020.

**Plaintiff Mr. Southers's Experience**

107. On or around June 15, 2018, Mr. Southers took out a loan with Shiva for approximately $961.

108. In addition to charging Mr. Southers 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Selig agreed to submit "All Disputes" to either arbitration or small claims court.

109. While Mr. Southers made payments on the loan, he was not able to keep up with payments on the loan due to the high interest rate.

110. Starting in or around November 2019, Mr. Southers began to receive phone calls in which the caller identified himself or herself with Shiva.

111. The callers used different numbers to call Mr. Southers so he couldn't tell that the calls were coming from Shiva.

112. At least some of these calls started with a recorded message or a long pause.

113. Mr. Southers registered his phone number with the National Do Not Call Registry on December 3, 2019.

**Plaintiff Mr. Turpin's Experience**

114. On or around November 2, 2017, Mr. Turpin took out a loan with Shiva for approximately $1200.

115. Based upon information and belief, in addition to charging Mr. Turpin 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Mr. Turpin agreed to submit "All Disputes" to either arbitration or small claims court.

14

116.    On or around August 16, 2018, Shiva then sued Mr. Turpin in Richmond General District Court for an alleged breach of the loan agreement, despite its agreement to arbitrate all disputes.

117.    On or around October 9, 2019, Shiva obtained a default judgment against Mr. Turpin in Richmond General District Court.

118.    On or around January 2, 2019, Shiva initiated garnishment proceedings against Mr. Turpin to collect on the aforementioned default judgment.

**Plaintiff Ms. Watson's Experience**

119.    On or around November 26, 2018, Ms. Watson took out a loan with Shiva for approximately $350.

120.    In addition to charging Ms. Watson 360% APR, the agreement contained a binding arbitration clause that stated that both Shiva and Ms. Watson agreed to submit "All Disputes" to either arbitration or small claims court.

121.    While Ms. Watson made payments on the loan, she had trouble keeping up with payments given the loan's high interest rate.

122.    In or around January 2020, Ms. Watson received phone calls in which the caller identified himself or herself with Shiva.

123.    When Ms. Watson picked up the phone to answer these calls, she heard a long pause before she was connected with an actual person.

124.    These calls came from many different numbers such that Ms. Watson could not tell when it was Shiva who was calling her.

125.    Ms. Watson repeatedly told these callers to stop contacting her.

126.    On or around February 1, 2020, Ms. Watson revoked any authorization that Shiva may have had to electronically withdraw funds from her bank account.

127.    Subsequent to this, Shiva electronically withdrew funds from Ms. Watson's bank account without her consent.

128.    Due to Shiva's actions, Ms. Watson was forced to take remedial actions including closing her bank account.

## CLASS DEFINITIONS

129.    Plaintiffs define the following classes for purposes of this action:

130.    **Virginia Shiva Consumer Class:** All individuals who reside in Virginia and who entered into a loan agreement with Defendants;

a.    **Sued Virginia Shiva Consumer Sub-Class**: All individuals in the Virginia Shiva Consumer Class who were sued by Defendants in a Virginia court regarding the that individual's alleged breach of his or her loan agreement with Defendants;

    i.    **Sued Virginia Shiva Consumer Past Two Years Sub-Class:** All individuals in the Sued Virginia Shiva Consumer Sub-Class where Defendants' lawsuit against such individual was commenced on or after March 16, 2018 up to the filing of this present lawsuit;

b.    **Shiva Consumer Changed Arbitration Terms Sub-Class**: All individuals in the Virginia Shiva Consumer Class who entered into a loan agreement with Defendants that contained an arbitration provision, Defendants subsequently attempted to revise the terms of the arbitration clause, and the individual never withdrew any more funds from Shiva after the individual received notice of this alleged change in terms;

c. **Virginia Shiva Consumer Past Two Years Sub-Class**: All individuals in the Virginia Shiva Consumer Class who entered into a loan agreement with Defendants from March 16, 2018 up until the filing of this action;

d. **Shiva Consumers With One Draw Sub-Class:** All individuals in the Virginia Shiva Consumer Past Two Years Sub-Class who only received one disbursement on their loan with Defendants;

e. **Shiva Consumers Without Grace Period 1 Year Sub-Class:** All individuals in the Virginia Shiva Consumer Class who received periodic statements from Defendants within one year from the filing of this complaint that stated there was no grace period on that individual's loan with Defendants;

f. **Shiva Consumers Without Grace Period Past 2 Years Sub-Class:** All individuals in the Virginia Shiva Consumer Class who received periodic statements from Defendants between prior to March 16, 2018 until the filing of this complaint that stated there was no grace period on that individual's loan with Defendants;

131. **Consumers With Shiva Calls Class:** Any individual who resides in Virginia and in the past four years from the filing date of this complaint has either received calls from Defendants after consumer informed Defendants to stop contacting her or received calls from Defendant in which Defendant used an auto dialer telephone system without the consumer's consent to do so;

a. **Consumers With Shiva Calls in Past Two Years Sub-Class:** Any individual in the Consumers With Shiva Calls Class who received calls from Defendants between March 16, 2018 until the filing of this action after telling Defendants to stop contacting them;

132.     **Consumers With Improper Debits Class:** Any individual who resides in Virginia, entered into a loan agreement with Defendants, had revoked any authorization for Defendants to electronically transfer funds from any bank account belonging to that consumer, and between March 16, 2015 until the filing of this action, Defendants continued to electronically withdraw funds from such bank account after the consumer had revoked authorization; and

a.     **Consumers With Improper Debits in Past Year Sub-Class**: Any individual in the Consumers With Improper Debits Class where such unauthorized electronic withdrawal of funds occurred in the past year.

## CLAIMS FOR RELIEF

**COUNT ONE – DECLARATION THAT DEFENDANT'S LOAN AGREEMENTS ARE VOID**
**Plaintiffs Ms. Bauer-Robertson, Mr. Reel, Ms. Richardson, Ms. Johnson, Mr. Turpin, Mr. Selig, and Mr. Ryan, and the Virginia Shiva Consumer Class**

133.     Plaintiffs Ms. Bauer-Robertson, Mr. Reel, Ms. Richardson, Ms. Johnson, Mr. Turpin, Mr. Selig, and Mr. Ryan (the "Sued Plaintiffs") reallege and incorporate by reference all paragraphs above as if fully set forth herein.

134.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Sued Plaintiffs bring this claim for themselves and on behalf of the Virginia Shiva Consumer Class.

135.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, the Sued Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, the Sued Plaintiffs allege that Shiva has entered into loan agreements with at least 100 Virginia consumers since March 16, 2018. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

136.    **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).**
Common questions of law and fact exist as to all members of the putative Class, and there are no
factual or legal issues that differ between the putative class members. These questions predominate
over the questions affecting only individual Class Members. The principal issues are: (a) whether
the arbitration clause was a material term of the loan agreement; (b) whether Shiva never intended
to abide by this arbitration clause; (c) whether consumers relied on Shiva's representation to abide
by the arbitration clause; and (d) whether consumers were induced by the arbitration clause to
enter into the agreement.

137.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. The Sued Plaintiffs' claims are typical of the
claims of each putative Class Member. The Sued Plaintiffs, as well as every putative Class
Member, allege the same count of fraudulent inducement in entering a loan agreement with Shiva,
in violation of Virginia Law. These claims challenge Defendants' deception of their intent in
entering the arbitration agreement. In addition, the Sued Plaintiffs are entitled to relief under the
same causes of action as the other members of the putative Class.

138.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** The Sued Plaintiffs are
adequate representatives of the putative Class, because their interests coincide with, and are not
antagonistic to, the interests of the members of the Class they seek to represent; they have retained
counsel competent and experienced in such litigation; and they have and intend to continue to
prosecute the action vigorously. The Sued Plaintiffs and their counsel will fairly and adequately
protect the interests of the members of the Class. Neither the Sued Plaintiffs nor their attorneys
have any interests that might cause them not to vigorously pursue this action.

139.    **Primarily Seeking Declaratory Relief. Fed. R. Civ. P. 23(b)(2)**. Defendants have
acted in a manner that apply generally to the class as Defendants consistently fraudulently induced

class members to enter into loan agreements. All class members seek the same declaratory relief: to void their loan agreements with Defendants. Further, questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

140.    Defendants entered into loan agreements with Plaintiffs Ms. Richardson, Ms. Johnson, Mr. Turpin, Mr. Selig, and Mr. Ryan that contained an arbitration clause, which stated that neither party could bring any claim relating to the loan agreement in Virginia, outside of small claims court.

141.    Defendant never intended to abide by this agreement and rather intended to sue the Sued Plaintiffs in Virginia General District Court in the event that Defendant believed any of the Sued Plaintiffs breached the agreement.

142.    Plaintiffs relied on the arbitration clause by not bringing legal claims against Defendant pertaining to the loan agreement in court.[1]

---

[1] Until this present action.

143.    Plaintiffs were induced into entering the loan agreement, believing that any disputes that arose out of the agreement would be handled in an informal manner via the process in the arbitration clause.

144.    Defendants actions constituted fraudulent inducement under Virginia law.

145.    The Sued Plaintiffs suffered actual damages as a result of this fraudulent inducement.

146.    The Sued Plaintiffs and putative Class Members seek a declaration from this Court that the loan agreements are void and an award of actual damages.

## COUNT TWO – DECLARATION THAT DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATION
**Plaintiffs Ms. Bauer-Robertson, Mr. Reel, Ms. Richardson, Ms. Johnson, Mr. Turpin, Mr. Selig, and Mr. Ryan and Sued Virginia Shiva Consumer Sub-Class**

147.    The Sued Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

148.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Sued Plaintiffs bring this claim for themselves and on behalf of the Sued Virginia Shiva Consumer Sub-Class.

149.    **Numerosity. Fed. R. Civ P 23(a)(1)**. Upon information and belief, Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, the Sued Plaintiffs allege that Shiva sued over 100 Virginia consumers since March 16, 2018, due to alleged breaches in loan agreements. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

150.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate

over the questions affecting only individual Class Members. The principal issues are whether (a) Shiva sued consumers in Virginia court for claims arising from loan agreements and (b) whether such actions by Shiva constituted waiver of its right to compel arbitration under the terms of the loan agreements.

151.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. The Sued Plaintiffs' claims are typical of the claims of each putative Class Member. The Sued Plaintiffs, as well as every putative Class Member, allege the same claim: declaration that Defendants have waived their right to arbitration. These claims challenge Defendants' blatant contravention of its own arbitration agreement by suing consumers in Virginia Courts. In addition, the Sued Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

152.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. The Sued Plaintiffs are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. The Sued Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither the Sued Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

153.    **Primarily Seeking Declaratory Relief. Fed. R. Civ. P. 23(b)(2)**. Defendants have acted in a manner that apply generally to the class as Defendants consistently fraudulently induced class members to enter into loan agreements. All class members seek the same declaratory relief: to void their loan agreements with Defendants. Further, questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

154.    In the alternative to Defendants fraudulently inducing the Sued Plaintiffs into entering loan agreements with Defendant, Defendants and the Sued Plaintiffs entered into a loan agreement with binding arbitration clause.

155.    Defendants then sued the Sued Plaintiffs in Virginia General District Court, in violation of the arbitration clause.

156.    Defendants' act of filing a lawsuit against the Sued Plaintiffs constituted a waiver of Defendants' rights to arbitration under the loan agreement.

157.    Defendants' award of a default judgment against Plaintiffs Ms. Johnson, Mr. Turpin, and Mr. Ryan also served as a as a waiver of Defendants' rights to arbitration under the loan agreement.

158.    Defendants pursuit of garnishment through the Virginia court system in their claims against Ms. Johnson, Mr. Turpin, and Mr. Ryan was yet another waiver of Defendants' right to arbitration.

159.     The Sued Plaintiffs and putative Class Members seek a declaration from this Court that Defendants have waived their right to compel arbitration under the terms of the loan agreement.

### COUNT THREE – VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### Va. Code § 59.1-196, *et seq.*
### Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, Ms. Watson, and the Virginia Shiva Consumer Past Two Years Sub-Class

160.     Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson reallege and incorporate by reference all paragraphs above as if fully set forth herein.

161.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson bring this claim for themselves and on behalf of the Virginia Shiva Consumer Past Two Year Sub-Class.

162.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson allege that Defendants have entered into loan agreements with binding arbitration clauses with at least 100 Virginia consumers since March 16, 2018. The names and addresses of the Class Members are identifiable through the internal business records maintained by Defendants and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

163.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether

Defendants entered into arbitration agreements with each consumer; (b) whether use of such an arbitration clause was intended as a claims suppression tool to evade liability from consumer protection statutes; (c) whether Defendants intended to abide by the arbitration clause; (d) whether Defendants' violation was willful; (e) what is the proper measure of actual damages, and (f) what is the proper measure of statutory damages.

164.   **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiffs Ms. Mobley, Ms. Galloway's, Mr. Miller's, Mr. Reel's, and Ms. Watson's claims are typical of the claims of each putative Class Member. Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson, as well as every putative Class Member, allege the same violations of the VCPA. These claims challenge Defendants' standard business practice to enter binding arbitration agreements with consumers that Defendants have no intention to abide by and rather intend to use merely a a claims suppression device. In addition, Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson are entitled to relief under the same causes of action as the other members of the putative Class.

165.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Reel, Mr. Miller, and Ms. Watson nor their attorneys have any interests that might cause them not to vigorously pursue this action.

166. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

167. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

168. Defendant Shiva was a supplier of consumer goods and services as defined in Va. Code § 59.1-198 as to Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, and Ms. Watson and each putative Class Member.

169. In the course of Defendants' business, they willfully required Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson to sign a mutual binding arbitration clause in order to obtain a loan with no intention of honoring this agreement. Defendants required

Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson to enter into such an arbitration agreement in order to suppress consumer protection claims against them. Accordingly, Defendants engaged in acts and practices violating the VCPA.

170. Defendants intent to not abide by the arbitration clause is evidenced by the fact that Defendants have repeatedly sued consumers in Virginia General District Courts regarding alleged breaches of loan agreement nearly identical to the ones entered into by Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson.

171. Defendants in fact sued Mr. Miller in Loudoun County General District Court over an alleged breach of his loan agreement.

172. Defendants violated the VCPA as to Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson and members of the putative Class by using deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(A)(14).

173. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

174. Defendants' conduct proximately caused injuries to Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson and the other Class Members.

175. Plaintiffs Ms. Mobley, Ms. Galloway, Mr. Miller, Mr. Reel, and Ms. Watson and each putative Class Member would have necessarily relied upon Defendants' misrepresentations that they would abide by the arbitration clause.

176. Plaintiffs and the other Class Members were injured as a result of Defendants' conduct in that the Plaintiffs and the other Class Members believed they could not use Virginia courts to pursue their legal claims against Shiva. For those consumers who were sued by

Defendants, such consumers had to expend time and energy to address court proceedings; possible impacts on their credit reports; and experienced emotional distress, humiliation, and embarrassment from being sued.

177.     Defendants willfully violated the VCPA as such violations were a part of their established business model, rendering Defendants liable pursuant to § 59.1-204(a), entitling each Class member to $1,000 in statutory damages.

178.     In the alternative to the allegation that Defendants' violations were willful, Defendants are liable pursuant to § 59.1-204(a), entitling each Class member to $500 in statutory damages.

179.     Plaintiffs and the putative Class Members are entitled to recover costs and attorneys' fees from the Defendants in an amount to be determined by the Court.

## COUNT FOUR – FRAUD
**Plaintiffs Mr. Reel, Ms. Richardson, Ms. Johnson, Mr. Turpin, Mr. Selig, Mr. Ryan, the Virginia Shiva Consumer Past Two Years Sub-Class, and the Sued Virginia Shiva Consumer Past Two Years Sub-Class**

180.     The Sued Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

181.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Sued Plaintiffs bring this claim for themselves and on behalf of the Virginia Shiva Consumer Past Two Years Sub-Class and the Sued Virginia Shiva Consumer Past Two Years Sub-Class.

182.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, the Sued Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiffs allege that Shiva has sued at least 100 Virginia consumers since March 16, 2018, for alleged breaches of loan agreements between Shiva and those consumers.

Plaintiffs further allege that at least 100 Virginia consumers entered in loan agreements with Shiva since March 16, 2018, in which such agreements contained a purported binding arbitration clause. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

183. **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Shiva misrepresented its agreement to arbitrate all disputes with borrowers and; (b) whether borrowers relied on this misrepresentation and thus did not raise consumer protection claims in court; (c) what is the proper measure of actual damages, and (f) what is the proper measure of punitive damages.

184. **Typicality. Fed. R. Civ. P. 23(a)(3)**. The Sued Plaintiffs' claims are typical of the claims of each putative Class Member. The Sued Plaintiffs, as well as every putative Class Member, allege the same fraud. These claims challenge Defendants' standard business practice to enter binding arbitration agreements with consumers, thereby suppressing consumers from raising their own claims in court, and then to violate this agreement by suing consumers in Virginia courts. In addition, the Sued Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

185. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** the Sued Plaintiffs are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained

counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. The Sued Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. None of the Sued Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

186. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

187. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

188. Defendants intentionally misrepresented to consumers that they would arbitrate all disputes concerning loans it made to consumers.

189.    Discovery will show that Defendants made such misrepresentations as a claims suppression tactic to avoid liability for violation of consumer protection laws.

190.    The Sued Plaintiffs relied on these misrepresentations and did not bring consumer protection claims in court.

191.    Defendants' misrepresentations were deliberately and intentionally made such to constitute actual malice.

192.    Defendants' misrepresentations were material as they impacted the Sued Plaintiffs' legal rights and caused the Sued Plaintiffs to spend time and energy to ascertain why they were being sued in court.

193.    The Sued Plaintiffs suffered actual and economic damage, including but not limited to, loss of time, emotional distress, humiliation, and embarrassment as a result of Defendant's actions.

194.    The Sued Plaintiffs and the putative Class Members are entitled to seek and Defendants are responsible to pay actual and punitive damages.

**COUNT FIVE -- DECLARATION THAT CHANGE IN ARBITRATION TERMS IS UNENFORCEABLE**
**Plaintiff Mr. Reel, Ms. Richardson, and the Shiva Consumer Changed Arbitration Terms Sub-Class**

195.    Plaintiffs Mr. Reel and Ms. Richardson realleges and incorporate by reference all paragraphs above as if fully set forth herein.

196.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Mr. Reel and Ms. Richardson bring this claim for themselves and on behalf of the Shiva Consumer Changed Arbitration Terms Sub-Class.

197.    **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiffs Mr. Reel and Ms. Richardson allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiffs Mr. Reel and Ms. Richardson allege that Defendants have entered into loan agreements with at least 100 Virginia consumers in which Shiva then has attempted to change the arbitration provision of such agreements. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

198.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Shiva attempted to change the terms of the loan agreement and (b) whether such change was enforceable.

199.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiffs Mr. Reel's and Ms. Richardson's claims are typical of the claims of each putative Class Member. Plaintiffs Mr. Reel and Ms. Richardson, as well as every putative Class Member, allege the same claim: declaration that Defendants' change to a pre-existing contract in unenforceable and that the original terms apply. These claims challenge Defendants' attempt to circumvent their own drafted arbitration agreement to sue consumers in Virginia courts. In addition, Plaintiffs Mr. Reel and Ms. Richardson are entitled to relief under the same causes of action as the other members of the putative Class.

200.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Mr. Reel and Ms. Richardson are adequate representatives of the putative Class, because their interests coincide

with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs Mr. Reel and Ms. Richardson and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs Mr. Reel, Ms. Richardson nor their attorneys have any interests that might cause them not to vigorously pursue this action.

201.    **Primarily Seeking Declaratory Relief. Fed. R. Civ. P. 23(b)(2)**. Defendants have acted in a manner that apply generally to the class as Defendants have attempted to switch the arbitration terms on their loan agreements throughout Virginia. All class members seek the same declaratory relief: a declaration that Defendants' attempts to change terms in an already existing contract are unenforceable. Further, questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

202.    Shiva represented that it entered into loan agreements with Plaintiffs Mr. Reel and Ms. Richardson.

203.     This agreements contained an arbitration clause that barred either party from bring claims in Virginia courts, aside from small claims courts.

204.     Subsequent to entering this agreement, Defendants sent Plaintiff Ms. Richardson notice that Defendants was changing the arbitration terms to state that either party could sue in Virginia General District Court.

205.     Plaintiffs Mr. Reel and Ms. Richardson never agreed to this change.

206.     Plaintiffs Mr. Reel and Ms. Richardson never took any more funds from Shiva subsequent to this purported change in loan terms.

207.     Plaintiffs Mr. Reel and Ms. Richardson and putative Class Members seek a declaration from this Court that Defendants' attempt to change the arbitration terms of the loan agreement is void.

## COUNT SIX: USURY
## Va. Code § 6.2-303
### Plaintiffs Ms. Galloway, Mr. Reel, Mr. Ryan and Shiva Consumers With One Draw Sub-Class

208.     Plaintiffs Ms. Galloway, Mr. Reel, and Mr. Ryan (the "One Draw Plaintiffs") reallege and incorporate by reference all paragraphs above as if fully set forth herein.

209.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the One Draw Plaintiffs bring this claim for themselves and on behalf of the Shiva Consumers with One Draw Sub-Class.

210.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, the One Draw Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, the One Draw Plaintiffs allege that at least 100 Virginia consumers have taken out loans with Defendants since March 16, 2018 and only received one disbursal of funds

from on said loans. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

211.    **Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether consumers only received one disbursal of funds from Defendants; (b) whether Defendants' loans were open-ended credit under Virginia law; (c) whether Defendants' loans were usurious and in violation of Virginia law, and (d) what is the proper measure of damages.

212.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. The One Draw Plaintiffs' claims are typical of the claims of each putative Class Member. The One Draw Plaintiffs, as well as every putative Class Member, allege the same count of usury. These claims challenge Defendants' standard lending practice as a sham attempt to evade Virginia usury laws. In addition, the One Draw Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

213.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** The One Draw Plaintiffs are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. The One Draw Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither the One Draw Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

214. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

215. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

216. Defendants lent funds to the One Draw Plaintiffs with an APR of around 360% (the "High-Interest Loans").

217. Each of the One Draw Plaintiffs only ever received one disbursement of funds the High-Interest Loans.

218. Each of the One Draw Plaintiffs only sought one disbursement of funds and never intended to use the High-Interest Loan as open-ended credit.

219.    The onerous interest payments required on the High-Interest Loans made it impossible for the One Draw Plaintiffs to make any subsequent withdraws of funds from the loan.

220.    The High Interest Loans were not open-ended credit.

221.    The High Interest Loans was in fact usurious in violation of Va. Code § 6.2-303(A).

222.    As a result of the High Interest Loan, the One Draw Plaintiffs suffered actual damages in the amount of illegal interest he paid on the loan, the hardship these payments caused, and the emotional distress caused by the illegal debt.

223.    Plaintiff and the putative Class seek damages including the total amount of interest paid in excess of 12% APR; twice the amount paid in interest during the prior two years, and court costs and reasonable attorney's fees. Va. Code § 6.2-305(A).


**COUNT SEVEN: USURY**
**Va. Code § 6.2-303**
**Plaintiff Mr. Johnson and Shiva Consumers Without Grace Past 2 Years Period Sub-Class**

224.    Plaintiff Mr. Johnson realleges and incorporates by reference all paragraphs above as if fully set forth herein.

225.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Mr. Johnson bring this claim for himself and on behalf of the Shiva Consumers Without Grace Period Past 2 Years Sub-Class.

226.    **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiff Mr. Johnson alleges that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiff Mr. Johnson alleges that at least 50 Virginia consumers have taken out loans with Shiva and since March 16, 2018 received notice that such loan did not contain a grace period. The names and addresses of the Class Members are identifiable through the internal

business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

227.    **Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Defendants provided a grace period to make payments on its loans; (b) whether Defendants' loans were open-ended credit under Virginia law; (c) whether Defendants' loans were usurious and in violation of Virginia law, and (d) what is the proper measure of damages.

228.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff Mr. Johnson's claim is typical of the claims of each putative Class Member. Plaintiff Mr. Johnson, as well as every putative Class Member, allege the same count of usury. These claims focus on Defendants not providing consumers with a grace period to make payments on loans, making such loans usurious under Virginia law. In addition, Plaintiff Mr. Johnson is entitled to relief under the same causes of action as the other members of the putative Class.

229.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff Mr. Johnson is an adequate representative of the putative Class, because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he has and intends to continue to prosecute the action vigorously. Plaintiff Mr. Johnson and his counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff Mr. Johnson nor his attorneys have any interests that might cause them not to vigorously pursue this action.

230. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

231. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

232. Shiva lent money to Plaintiff Mr. Johnson at a rate of 360% per year (the "Johnson Loan").

233. In its periodic statements to Mr. Johnson, Shiva repeatedly told Mr. Johnson that there was no grace period for his loan.

234. The Johnson Loan did not qualify as an open-ended credit plan under Virginia law since it lacked a grace period. Va. Code § 6.2-312.

235.     The Johnson Loan was thus subject to Virginia's usury law.

236.     The Johnson Loan violated Virginia's usury law which only permits loans at a maximum rate of 12% interest per year. Va. Code § 6.2-303(A).

237.     As a result of the Johnson Loan, Plaintiff Mr. Johnson suffered actual damages in the amount of illegal interest he paid on the loan, the hardship these payments caused, and the emotional distress caused by the illegal debt.

238.     Plaintiff Mr. Johnson and the putative Class seek damages including the total amount of interest paid in excess of 12% APR; twice the amount paid in interest during the prior two years, and court costs and reasonable attorney's fees. Va. Code § 6.2-305(A).

### COUNT EIGHT – VIOLATIONS OF THE TRUTH IN LENDING ACT (TILA) 15 U.S.C. § 1601 *et seq.*

### Plaintiff James Johnson and Shiva Consumers Without Grace Period 1 Year Sub-Class

239.     Plaintiff Mr. Johnson realleges and incorporates by reference all paragraphs above as if fully set forth herein.

240.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this claim for himself and on behalf of the Shiva Consumers Without Grace Period 1 Year Sub-Class.

241.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiff alleges that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiff Mr. Johnson alleges that at least 100 consumers received loan disclosures from Shiva stating that there would be a grace period on their loan and then received periodic statements in the past 4 years that stated that no grace period applied to  the loan. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

242.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**
Common questions of law and fact exist as to all members of the putative Class, and there are no
factual or legal issues that differ between the putative class members. These questions predominate
over the questions affecting only individual Class Members. The principal issue is whether (a)
Defendants provided in their loan agreement with consumers a disclosure that a grace period would
apply to their loans, (b) whether Defendants subsequently provided periodic statements that stated
that no grace period applied to their loans, and (c) whether there was in fact a grace period for
these loans.

243.     **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff Mr. Johnson's claims are typical of
the claims of each putative Class Member. Plaintiff Mr. Johnson, as well as every putative Class
Member, allege the same violations of 15 U.S.C. §§ 1632(c)(2)(C), 1637(a)(1). These claims
challenge Defendants' failure to provide accurate lending disclosures as required by federal law.
In addition, Plaintiff Mr. Johnson is entitled to relief under the same causes of action as the other
members of the putative Class.

244.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff Mr. Johnson is
an adequate representative of the putative Class, because his interests coincide with, and are not
antagonistic to, the interests of the members of the Class he seeks to represent; he has retained
counsel competent and experienced in such litigation; and he has and intend to continue to
prosecute the action vigorously. Plaintiff Mr. Johnson and his counsel will fairly and adequately
protect the interests of the members of the Class. Neither Plaintiff Mr. Johnson nor his attorneys
have any interests that might cause them not to vigorously pursue this action.

245.     **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the
Class Members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

246.    Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

247.    In its loan disclosures to Mr. Johnson, Shiva stated that the Johnson Loan would contain a grace period.

248.    In its subsequent periodic statements to Mr. Johnson, Shiva stated that there was no grace period for the Johnson Loan.

249.    Defendant violated §§ 1632(c)(2)(C) and 1637(a)(1) of TILA as to each Plaintiff and putative Class Members stating in initial loan disclosures that there was a grace period and then stating in subsequent periodic statements that there was no grace period on the loans.

250.     As a result of this failure to disclose, Plaintiff Mr. Johnson were not able to make a fully informed decision about accessing credit.

251.     Defendants' resources justify the maximum allowable statutory damage award.

252.     Plaintiff Mr. Johnson and the putative Class Members are entitled to recover statutory damages, costs, and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1640.

### COUNT NINE  - VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227
### Plaintiffs Ms. Hollands, Ms. Smith, Mr. Southers, Ms. Watson, and Consumers With Shiva Calls Class

253.     Plaintiffs Ms. Hollands, Ms. Smith, Mr. Southers, and Ms. Watson (the "Telephone Call Plaintiffs") reallege and incorporate by reference all paragraphs above as if fully set forth herein.

254.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Telephone Call Plaintiffs bring this claim for themselves and on behalf of the Consumers With Shiva Calls Class.

255.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Telephone Call Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, the Telephone Call Plaintiffs alleges that at least 50 Virginia consumers who entered a loan agreement with Shiva and in the past four years from the filing date of this complaint have either received calls from Defendants after informing Defendants to stop contacting them or received calls from Defendants in which Defendants used an auto dialer telephone system without the consumer's consent to do so. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

256.    **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).**
Common questions of law and fact exist as to all members of the putative Class, and there are no
factual or legal issues that differ between the putative class members. These questions predominate
over the questions affecting only individual Class Members. The principal issues are: (a) whether
Defendants made such calls to consumers; (b) whether Defendants made calls after consumers told
them to stop calling; (c) whether Defendants used an ATDS to contact consumers, (d) whether
Defendants had authorization to use an ATDS to contact consumers, and (e) what is the proper
measure of damages.

257.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. The Telephone Call Plaintiffs' claims are
typical of the claims of each putative Class Member. The Telephone Call Plaintiffs, as well as
every putative Class Member, allege the same violation of the TCPA. These claims focus on
Defendants continuously making harassing calls to consumers by using an automatic telephone
dialing system without consumers' consent and calling consumers after consumers had explicitly
told Defendants to stop doing so. In addition, the Telephone Call Plaintiffs are entitled to relief
under the same causes of action as the other members of the putative Class.

258.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** The Telephone Call
Plaintiffs are adequate representatives of the putative Class, because their interests coincide with,
and are not antagonistic to, the interests of the members of the Class they seek to represent; they
have retained counsel competent and experienced in such litigation; and they have and intends to
continue to prosecute the action vigorously. The Telephone Call Plaintiffs and their counsel will
fairly and adequately protect the interests of the members of the Class. Neither the Telephone Call
Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this
action.

259.   **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

260.   Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

261.   Each of the Telephone Call Plaintiffs' phone numbers is on the national Do Not Call Registry.

262.   Defendants have repeatedly called the Telephone Call Plaintiffs even after they told them not to.

263.   The Telephone Call Plaintiffs revoked any possible authorization they gave Defendants to call her when the Telephone Call Plaintiffs told Defendants to stop calling them.

264.     Almost every time Ms. Hollands has told Defendants to stop contacting her, the caller tells her that the calls will continue.

265.     Defendants have used many different numbers to call Ms. Hollands, Ms. Smith, and Ms. Watson.

266.     Defendants have used so many different numbers in an effort to mask their calls so that Ms. Hollands, Ms. Smith, and Ms. Watson didn't know that it is Defendants who were calling them.

267.     In at least some of that the Telephone Call Plaintiffs received from Defendants, when the Telephone Call Plaintiffs picked up their phones, they either heard a recording or a long pause before they spoke to a live person.

268.     Defendants used an ATDS in their calls to the Telephone Call Plaintiffs. 47 U.S.C. § 227(a)(1).

269.     Ms. Hollands believes she have received over 50 calls from Defendants since telling them to stop contacting her.

270.     Ms. Watson believes she received over 25 calls from Defendants since telling them to stop contacting her.

271.     Mr. Southers believes he received over 15 calls from Defendants since telling them to stop contacting him.

272.     Ms. Smith believes she received over 200 calls from Defendants since telling them to stop contacting her.

273.     Defendants continued to call the Telephone Call Plaintiffs despite the fact each had registered their number on the national Do Not Call Registry, in violation of federal law. 47 U.S.C. § 227(c)(3); 47 C.F.R. § 64.1200(c)(2).

274.     Defendants failed to maintain a do not call list in violation of federal law. 47 U.S.C. § 227(c)(2); 47 C.F.R. § 64.1200(d)(3).

275.     Defendants used an ATDS in calls to the Telephone Call Plaintiffs without any of their consent to do so, in violation of federal law. 47 U.S.C. § 227(b)(1)(A)-(B).

276.     Defendants transmitted misleading and inaccurate caller identification information in their calls to the Telephone Call Plaintiffs, in violation of federal law. 47 U.S.C. 227(e)(1).

277.     Defendants actions were done knowingly and willfully.

278.     As a result of these harassing calls, the Telephone Call Plaintiffs have suffered actual damages including lost time, anxiety, and emotional distress.

279.     The Telephone Call Plaintiffs and the putative Class seek statutory damages in the amount of $1500 for each phone call that was made in violation of federal law. 47 U.S.C. § 227(b)(3).

**COUNT TEN – VIOLATIONS OF THE VIRGINIA TELEPHONE PRIVACY PROTECTION ACT (VTPPA)**
**Va. Code § 59.1-510 et seq.**
**Plaintiffs Ms. Smith, Ms. Hollands, Ms. Watson, and Mr. Southers and Consumers With Shiva Calls in Past Two Years Sub-Class**

280.     The Telephone Call Plaintiffs reallege and incorporate by reference all paragraphs above as if fully set forth herein.

281.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Telephone Call Plaintiffs bring this claim for themselves and on behalf of the Consumers With Shiva Calls in Past Two Years Sub-Class.

282.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, the Telephone Call Plaintiffs allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, the Telephone Call Plaintiffs allege that at least 30 Virginia consumers,

since March 16, 2018, have received calls from Defendants after informing Defendants to stop contacting them. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

283.   **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Defendants made such calls to consumers; (b) whether Defendants made calls after consumers told them to stop calling; (c) whether such calls are covered under the VTPPA, and (d) what is the proper measure of damages.

284.   **Typicality. Fed. R. Civ. P. 23(a)(3)**. The Telephone Call Plaintiffs' claims are typical of the claims of each putative Class Member. The Telephone Call Plaintiffs, as well as every putative Class Member, allege the same violations of the VTPPA. These claims focus on Defendants continuously making harassing calls to consumers after consumers had explicitly told Defendants to stop doing so. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative Class.

285.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** The Telephone Call Plaintiffs are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intends to continue to prosecute the action vigorously. The Telephone Call Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither the Telephone Call

Plaintiffs nor their attorneys have any interests that might cause them not to vigorously pursue this action.

286.   **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

287.   Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

288.   Defendants' calls to the Telephone Call Plaintiffs were telephone solicitation calls as they were in connection with Defendants' prior offer of credit to the Telephone Call Plaintiffs. Va. Code § 59.1-510.

289.   Defendants were the responsible persons for these calls. Va. Code § 59.1-510.

290.    All of the Telephone Call Plaintiffs registered their phone numbers on the national Do Not Call Registry.

291.    Each of the Telephone Call Plaintiffs told defendants on numerous occasions to stop calling them.

292.    Despite the Telephone Call Plaintiffs' clear directive to stop calling them, Defendants continue to do so and have even told Ms. Hollands that "the calls will continue" in response to her request for them to stop calling her.

293.    Ms. Hollands believes she have received over 50 calls from Defendants since telling them to stop contacting her.

294.    Ms. Watson believes she received over 25 calls from Defendants since telling them to stop contacting her.

295.    Mr. Southers believes he received over 15 calls from Defendants since telling them to stop contacting him.

296.    Ms. Smith believes she received over 200 calls from Defendants since telling them to stop contacting her.

297.    Defendants calls to each of the Telephone Call Plaintiffs, after the respective plaintiff clearly told Defendants to stop such calls, violated the VTPPA. Va. Code § 59.1-514.

298.    Defendants have used many different numbers to call the Telephone Call Plaintiffs.

299.    Defendants used many different numbers in an effort to mask their calls so Ms. Hollands and Ms. Watson didn't know that it is Defendants who are calling her.

300.    Defendants use of different phone numbers to mask their identity was a violation of the VTPPA. Va. Code § 59.1-513.

301.    Defendants violations of the VTPPA were willful.

302.    As a result of these violations, the Telephone Call Plaintiffs suffered lost time, anxiety, and emotional distress.

303.    The Telephone Call Plaintiffs and the putative Class seek statutory damages in the amount of $1,500 for each phone call that was made in violation of the VTPPA, as well as reasonable attorney's fees and costs. Va. Code § 59.1-515.

## COUNT ELEVEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiffs Ms. Hollands and Ms. Smith

304.    Defendants continuously called Plaintiffs Ms. Hollands and Ms. Smith on nearly a daily basis to harass them and to try to intimidate them to pay Defendants money.

305.    Ms. Hollands and Ms. Smith have repeatedly told Defendants to stop contacting them and repeatedly Defendants have told Ms. Hollands and Ms. Smith that they will not stop calling them.

306.    Defendants have also repeatedly used different phone numbers to call Ms. Hollands and Ms. Smith in order to disguise their identity so that Ms. Hollands and Ms. Smith answers the call and so Defendants can harass them further.

307.    To date, Ms. Hollands believes she has received over fifty such calls from Defendants.

308.    To date, Ms. Smith believes she has received over two hundred such calls from Defendants.

309.    Defendants' conduct was intentional.

310.    Defendant's conduct was outrageous and intolerable.

311.    As a result of Defendants' unending harassing calls, Ms. Hollands has experienced significant emotional distress as well as lost time.

312.    Defendants are thus liable to Ms. Hollands and Ms. Smith for all actual damages they've suffered as a result of Defendants' harassing calls, as well as punitive damages up to $350,000 each, for Ms. Hollands and Ms. Smith.

**COUNT TWELVE – VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT (EFTA)**
**15 U.S.C. § 1693 et seq.**
**Plaintiff Ms. Watson and the Consumers With Improper Debits in Past Year Sub-Class**

313.    Plaintiff Ms. Watson realleges and incorporate by reference all paragraphs above as if fully set forth herein.

314.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Ms. Watson bring this claim for herself and on behalf of the Consumers With Improper Debits in Past Year Sub-Class.

315.    **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiff Ms. Watson alleges that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiff Ms. Watson alleges that Defendants electronically debited payments from at least 50 Virginia consumers' bank accounts in the past year without authorization to do so. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

316.    **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Shiva electronically debited consumers' bank accounts and (b) whether Shiva had authorization to do so.

317. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff Ms. Watson's claim is typical of the claims of each putative Class Member. Plaintiff Ms. Watson, as well as every putative Class Member, allege the same claim: that Defendants electronically debit consumers' bank accounts without authorization to do so, in violation of federal law. In addition, Plaintiff Ms. Watson is entitled to relief under the same causes of action as the other members of the putative Class.

318. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff Ms. Watson is an adequate representatives of the putative Class, because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff Ms. Watson nor her attorneys have any interests that might cause them not to vigorously pursue this action.

319. **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By

contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

320.    Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

321.    Defendants extended credit to Ms. Watson conditional to Ms. Watson's repayment by means of preauthorized electronic funds transfers, in violation of the EFTA. 15 U.S.C. § 1693k(1).

322.    Ms. Watson revoked any authorization and consent that she had ever given to Defendants to electronically debit funds from Ms. Watson's bank account.

323.    Despite Ms. Watson's revocation of such authorization and consent, Defendants still continued to electronically withdraw funds from her bank account up to March 2020.

324.    These unauthorized withdrawals violated the EFTA. 15 U.S.C. § 1693e(a).

325.    As a result of these withdrawals, Ms. Watson suffered actual damages.

326.    Ms. Watson and the putative Class seek damages including the total amount that Defendants electronically debited from class members' bank accounts without authorization to do so; statutory damages in the amount of the lesser of $500,000 or one per centum of Defendants' net worth, and court costs and reasonable attorney's fees. 15 U.S.C. § 1693m(a).

### COUNT THIRTEEN – CONVERSION
### Va. Code § 8.01-423
### Plaintiffs Mr. Reel and Ms. Watson and Consumers With Improper Debits Class

327.    Plaintiffs Mr. Reel and Ms. Watson reallege and incorporate by reference all paragraphs above as if fully set forth herein.

328.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Mr. Reel and Ms. Watson bring these claims for themselves and on behalf of the Consumers With Improper Debits Class.

329.     **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiffs Mr. Reel and Ms. Watson allege that the Class Members are so numerous that joinder of all is impractical. On information and belief, Plaintiffs Mr. Reel and Ms. Watson alleges that Defendants electronically debited payments from at least 100 Virginia consumers' bank accounts since March 16, 2015, without authorization to do so. The names and addresses of the Class Members are identifiable through the internal business records maintained by Shiva and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

330.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual Class Members. The principal issues are: (a) whether Shiva withdrew funds from consumers' bank accounts and (b) whether Shiva had authorization to do so.

331.     **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiffs Mr. Reel's and Ms. Watson's claim is typical of the claims of each putative Class Member. Plaintiffs Mr. Reel and Ms. Watson, as well as every putative Class Member, allege the same claim: that Defendants electronically debit consumers' bank accounts without authorization to do so. In addition, Plaintiffs Mr. Reel and Ms. Watson are entitled to relief under the same causes of action as the other members of the putative Class.

332.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs Mr. Reel and Ms. Watson are adequate representatives of the putative Class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seeks to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs Mr. Reel and Ms. Watson and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs Mr. Reel, Ms. Watson, nor their attorneys have any interests that might cause them not to vigorously pursue this action.

333.     **Superiority. Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the Class Members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

334.    Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members. Fed. R. Civ. P. 23(b)(2).

335.    Defendant's unauthorized withdrawal of funds from Ms. Watson's bank account was a wrongful exercise and/or assumption of authority over Ms. Watson's funds and deprived Ms. Watson of her possession of, and denied her rights to, these funds.

336.    Thus, these unauthorized withdrawals constituted the tort of conversion.

337.    As a result of these withdrawals, Plaintiff Ms. Watson suffered actual damages.

338.    Ms. Watson and the putative Class Members are entitled to seek and Defendants are responsible to pay actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Deborah Bauer-Robertson, Renee Galloway, Constance Hollands, James Johnson, Veda Johnson, Craig Miller, Melody Mobley, Brenard Reel, Tynisa Richardson, Lloyd Ryan, Patrick Selig, Melissa, Smith, Donnie Southers, Jimmy Turpin, , and Vtessa Watson request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendants and to (1) certify this matter to proceed as a class action under Rule 23 with Plaintiffs and their Counsel appointed to represent the respective classes; (2); enter declaratory relief as pled; (3) enter judgment for actual, statutory, and punitive damages as pled; (4) award attorney's fees, costs, pre-judgment, and post-judgment interest; and (5) award such other relief as the Court deems just and appropriate.

## TRIAL BY JURY IS DEMANDED

Respectfully Submitted,

DEBORAH BAUER-ROBERTSON, RENEE GALLOWAY, CONSTANCE HOLLANDS, JAMES JOHNSON, VEDA JOHNSON, CRAIG MILLER, MELODY MOBLEY, BRENARD REEL, TYNISA RICHARDSON, LLOYD RYAN, PATRICK SELIG, MELISSA SMITH, DONALD SOUTHERS, JIMMY TURPIN, AND VTESSA WATSON

By:      */s/ Kevin Dillon*
Leonard A. Bennett, VSB #37523
Thomas D. Domonoske, VSB # 35434
Kevin A. Dillon, VSB # 93475
Craig C. Marchiando, VSB # 89736
CONSUMER LITIGATION ASSOCIATES, PC
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: tom@clalegal.com
Email: kevin@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, VSB #72791
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com


Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone: 804-861-6000
Fax: 804-861-3368
Email: dale@pittmanlawoffice.com


Michael C. Litman, VSB #92364
LITMAN PLLC
6802 Paragon Place, Suite 410
Richmond, VA 23230
Telephone: 804-723-6912
Email: mike@mlitman.com