IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DEBORAH BAUER-ROBERTSON, *et al.*,
      Plaintiffs,

v.                                     Civil No. 3:20cv551 (DJN)

SHIVA FINANCE, LLC,
      Defendant.

**MEMORANDUM OPINION**
**(Granting Motion to Compel Arbitration)**

Plaintiffs Deborah Bauer-Robertson ("Bauer-Robertson"), Renee Galloway ("Galloway"), Constance Hollands ("Hollands"), James Johnson ("J. Johnson"), Veda Johnson ("V. Johnson"), Craig Miller ("Miller"), Melody Mobley ("Mobley"), Brenard Reel ("Reel"), Tynisa Richardson ("Richardson"), Lloyd Ryan ("Ryan"), Patrick Selig ("Selig"), Melissa Smith ("Smith"), Donnie Southers ("Southers"), Jimmy Turpin ("Turpin") and Vtessa Watson ("Watson") (collectively, "Plaintiffs") bring this action on behalf of themselves and all individuals similarly situated against Shiva Finance, LLC d/b/a Advance Financial 24/7 ("Defendant"),[1] alleging that Defendant violated a number of federal and state laws in relation to high-interest loans that Defendant made to consumers in Virginia. Among other things, Plaintiffs seek a declaration voiding their loan agreements with Defendant, a declaration that

---

[1] Plaintiffs originally named two defendants in their Complaint: Shiva Finance, LLC, and Harpeth Financial Services LLC. (Compl. (ECF No. 1) at 1.) However, on November 25, 2020, Plaintiffs filed a notice of voluntary dismissal (ECF No. 25) with respect to Harpeth Financial Services, LLC, and, on November 30, 2020, the Court dismissed without prejudice all claims against that defendant. (ECF No. 27.)

Defendant has waived its right to arbitration and money damages pursuant to statutory and common law causes of action.

This matter comes before the Court on Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 10). For the reasons set forth below, the Court GRANTS Defendant's Motion (ECF No. 10), and DISMISSES WITHOUT PREJUDICE Plaintiff's Class Action Complaint (ECF No. 1).[2]

## I.  BACKGROUND

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 299 (E.D. Va. 2019) *aff'd sub nom. Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) (citation and internal quotation marks omitted). As such, in considering Defendant's Motion to Compel Arbitration, the Court may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties. *Id.*; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citations omitted). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.* (citations omitted).

### A.  Plaintiffs' Complaint

On July 19, 2020, Plaintiffs filed their Class Action Complaint (ECF No. 1), raising thirteen counts for relief. In Count One, Plaintiffs ask the Court to declare Defendant's loan agreements void. (Compl. ¶¶ 133-46.) Plaintiffs base that claim on their allegation that Defendant never intended to abide by the Arbitration Provision contained in the loan agreements. (Compl. ¶¶ 140-46.) Specifically, Plaintiffs allege that the Arbitration Provision compelled the

---

[2]      The Court finds that the materials before it adequately present the issues such that oral argument will not materially aid in the decisional process and therefore will dispense with a hearing on Defendant's Motion.

parties to arbitrate any disputes that arose out of the loan agreements, except certain disputes that fell within the purview of small-claims court. (Compl. ¶¶ 140-46.) However, Defendant sued some of the Plaintiffs in Virginia General District Court. (Compl. ¶ 133, 141.) According to Plaintiffs, such conduct constituted fraudulent inducement under Virginia law. (Compl. ¶ 144.) Relatedly, in Count Two, Plaintiffs assert that Defendant has waived its right to arbitration by virtue of its decision to sue several of the Plaintiffs in General District Court. (Compl. ¶¶ 147-59.)

In Count Three, Plaintiffs bring a claim for violations of the Virginia Consumer Protection Act, Virginia Code § 59.1-196, *et seq*. (Compl. ¶¶ 160-79.) In Count Four, Plaintiffs bring a claim for Fraud. (Compl. ¶¶ 180-94.) Plaintiffs base Counts Three and Four on the same conduct that Plaintiffs allege in Counts One and Two.

In Count Five, Plaintiffs seek a declaration that a change in the Arbitration Provision is unenforceable. (Compl. ¶¶ 195-207.) As for this Count, Plaintiffs allege that Defendant sent a notice of an amendment to the Arbitration Provision that expressly allowed the parties to sue in General District Court. (Compl. ¶ 204.) Plaintiffs allege that they never agreed to this change, nor took any more funds from Defendant subsequent to the purported change in loan terms. (Compl. ¶¶ 205-06.)

In Count Six, Plaintiffs bring a claim for usury under Virginia Code § 6.2-303. (Compl. ¶¶ 208-23.) Count Six alleges that Defendant lent funds with an APR of around 360%. (Compl. ¶ 216.) Plaintiffs allege that members of a certain class (the "One Draw Plaintiffs") only ever received one disbursement of funds and never intended to use Defendant's loan as open-ended credit. (Compl. ¶¶ 217-18.) As such, Plaintiffs allege that the loans violated the 12% usury limit imposed by the Virginia Code. (Compl. ¶¶ 221-23.) Relatedly, in Count Seven, Plaintiffs raise a

3

claim for usury based on the allegation that certain loans did not have a grace period and, therefore, did not qualify as open-ended credit under Virginia law.  (Compl. ¶¶ 233-38.)

Count Eight asserts a claim for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.  (Compl. ¶¶ 239-52.)  Similar to Count Seven, Count Eight alleges that Defendant's initial loan disclosures to certain Plaintiffs represented that the loan would contain a grace period. (Compl. ¶¶ 247-52.)  However, in subsequent statements, Defendant allegedly stated that the loans did not have a grace period.  (Compl. ¶ 248.)

In Count Nine, Plaintiffs bring a claim for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.  (Compl. ¶¶ 253-79.)  Here, Plaintiffs allege that, despite placing their numbers on the national Do Not Call Registry or otherwise telling Defendant not to call them, Defendant repeatedly called certain Plaintiffs.  (Compl. ¶¶ 261-79.)  Plaintiffs allege that Defendant made these calls using an automated telephone dialing system.  (Compl. ¶ 268.) Based on this same conduct, Plaintiffs allege violations of the Virginia Telephone Privacy Protection Act, Virginia Code § 59.1-510 *et seq*., in Count Ten, and Intentional Infliction of Emotional Distress, in Count Eleven. (Compl. ¶¶ 280-312.)

As for Count Twelve, Plaintiffs allege violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*.  (Compl. ¶¶ 313-26.)  Plaintiffs allege that Defendant extended credit to certain Plaintiffs conditioned on their repayment by means of preauthorized electronic funds transfers.  (Compl. ¶ 321.)  Plaintiffs further allege that after revocation of any authorization or consent for Defendant to electronically debit funds from their bank accounts, Defendant continued to electronically withdraw funds.  (Compl. ¶¶ 322-26.)  Relatedly, in Count Thirteen, Plaintiffs bring a claim for Conversion.  (Compl. ¶¶ 327-38.)

**B.    Defendant's Motion to Compel Arbitration and Dismiss**

In response to Plaintiffs' Complaint, on October 21, 2020, Defendant filed its Motion to

Compel Arbitration and Dismiss (ECF No. 10).  In support of its Motion, Defendant first argues

that an arbitrator must decide threshold issues of arbitrability.  (Def.'s Mem. in Supp. of Mot. to

Compel Arbitration and Dismiss ("Def.'s Mem.") (ECF No. 11) at 7-10.)  Defendant asserts that

the Arbitration Provision clearly and unmistakably requires an arbitrator to determine

arbitrability issues, so the Court should compel arbitration regardless of Plaintiffs' challenges to

the Provision.  (Def.'s Mem. at 7-10.)  Additionally, Defendant argues that, because the

Complaint only attacks the Account Agreement as a whole (and not the Arbitration Provision in

particular), the Court lacks authority to determine whether Defendant fraudulently induced the

Arbitration Provision.  (Def.'s Mem. at 8-10.)  Finally, Defendant maintains that the Arbitration

Provision proves valid and enforceable.  (Def.'s Mem. at 10-14.)  In support of that argument,

Defendant observes that the Arbitration Provision never required Defendant to arbitrate, in every

instance, its breach of contract claims against Plaintiffs.  (Def.'s Mem. at 11.)  Defendant notes

that the Provision allowed both parties to pursue claims in a small-claims court, and that the

Virginia Code makes Small Claims Court a division of the General District Courts.  (Def.'s

Mem. at 11 (citing Virginia Code § 16.1-122.1).)  Defendant posits that "[u]se of the generic and

hyphenated phrase 'small-claims court' was intended to encompass all courts of limited

jurisdiction, and not intended to limit cases being brought to any specific court of limited

jurisdiction."  (Def.'s Mem. at 11.)

On November 25, 2020, Plaintiffs filed their Memorandum in Opposition to Defendant's

Motion to Compel Arbitration and Dismiss, (Pls.' Opp'n to Def.'s Mot. to Compel Arbitration

and Dismiss ("Pls.' Mem.") (ECF No. 26)), and, on December 16, 2020, Defendant filed its

Reply, (Reply in Supp. of Def.'s Mot. to Compel Arbitration ("Def.'s Reply") (ECF No. 29)),

rendering the matter now ripe for review.

## II.    STANDARD OF REVIEW

Section 2 of the Federal Arbitration Act ("FAA") provides that "a contract . . . to settle by

arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2.  Congress enacted the FAA "to reverse the longstanding judicial

hostility to arbitration agreements that had existed at English common law and had been adopted

by American courts, and to place arbitration agreements upon the same footing as other

contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citations omitted).

Thus, there exists a "strong federal policy in favor of enforcing arbitration agreements." *Hayes

v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016) (citations omitted); *see also Rowland

v. Sandy Morris Financial & Estate Planning Services, LLC*, __ F.3d __ , 2021 WL 1287563, at

*2 (4th Cir. Apr. 7, 2021) (noting that the FAA "established a national policy favoring

arbitration.").

A litigant can compel arbitration under the FAA by showing:  (1) the existence of a

dispute between the parties; (2) a written agreement that includes an arbitration provision which

purports to cover the dispute; (3) the relationship of the transaction, evidenced by the agreement,

to interstate or foreign commerce; and, (4) the failure, neglect or refusal of the opposing party to

arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).

In deciding the validity of arbitration agreements, including delegation provisions, courts

apply federal law. *Smith Barney, Inc. v. Critical Health Sys.*, 212 F.3d 858, 860-61 (4th Cir.

2000).  The FAA also "preserves state law contract defenses unless such defenses 'rely on the

uniqueness of an agreement to arbitrate' and are applied 'in a fashion that disfavors arbitration.'"
*Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (quoting *AT&T Mobility
LLC v. Concepcion*, 563 U.S. 333, 341-42 (2011)).   Relevant here, "a federal court may only
consider claims of fraud in the inducement 'if the fraud relates specifically to the arbitration
clause itself and not to the contract generally.'" *Sydnor v. Conseco Fin. Servicing Corp.*, 252
F.3d 302, 307 (4th Cir. 2001) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925
F.2d 1136, 1140 (9th Cir. 1991)); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388
U.S. 395, 404 (1967) (holding that the FAA "does not permit the federal court to consider claims
of fraud in the inducement of the contract generally.").

     "[T]he burden of proof [on a motion to compel arbitration] is akin to the burden on
summary judgment." *Gibbs*, 421 F. Supp. 3d at 399 (citation and internal quotation marks
omitted).   "Under this modified summary judgment approach, the district court views the facts in
a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor."
*Id.*   "Summary judgment is appropriate if the moving party demonstrates that there is 'no
genuine dispute as to any material fact' and that it is 'entitled to judgment as a matter of law.'"
*Id.* (citing Fed. R. Civ. P. 56(a)).   As the moving party, Defendant has the burden to show that
the arbitration clause applies.   *Id.* (citing *Hancock v. Am. Tel. & Tel., Co., Inc.*, 701 F.3d 1248,
1261 (10th Cir. 2012)).   If Defendant meets that burden, Plaintiffs may "rebut that showing with
evidence establishing a genuine dispute as to whether the provisions apply.'"   *Id.*   Because of the
federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should
be resolved in favor of arbitration."   *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp.*, 460 U.S. 1, 24-25 (1983)).

### III.   ANALYSIS

**A.   The Arbitration Provision**

Defendant issued each loan to Plaintiffs pursuant to a three-page contract titled "Line of Credit Disclosure and Account Agreement." (Def.'s Mem., Ex. A. ("Agreement") (ECF No. 11-1) at 2-4.) Each Agreement[3] included an Arbitration Provision.[4] (Agreement at 5-9.) The Arbitration Provision, entitled "Jury Trial Waiver and Arbitration Clause," constitutes a four-page section of the Agreement that sets forth provisions in a question-and-answer format. (Agreement at 5-9.) With respect to the question "Which Disputes are covered?", the Arbitration Provision supplies this answer:

> All Disputes. In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

(Agreement at 5.) Additionally, the Arbitration Provision included the following clause in response to the question "Can small-claims court solve some Disputes?":

> Yes. Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-

---

[3]   The loan agreement referenced here represents the agreement signed by Plaintiff Deborah Bauer-Robertson. Plaintiffs do not dispute that they signed these agreements, nor do they contend that any individual Plaintiff's loan agreement differed substantively from Ms. Bauer-Robertson's.

[4]   In 2020, Defendant amended the Agreement to include "General District Court" as an appropriate forum to litigate disputes. (Def.'s Mem., Ex. B ("Amended Agreement") (ECF No. 11-2) at 3.) That amendment provides the basis for Plaintiffs' argument that the Arbitration Provision constituted an illusory and unenforceable promise. (Pls.' Mem. at 17-19.) The Arbitration Provisions cited here reflect the original, pre-amendment provisions.

claims court loses the power to hear it, then the Dispute will only be heard by an
Arbiter.

(Agreement at 5-6.)  In 2020, Defendant amended that clause to include language expressly

addressing General District Court.  (Def.'s Mem. at 4; Amended Agreement at 3.)  Specifically,

Defendant amended the question to ask, "Can small-claims court or General District Court solve

some disputes?", and answered the question as follows:

> Yes.  Each party has the right to arbitrate, or to go to small-claims court or
> General District Court if those courts have the power to hear the Dispute.
> Arbitration will solve all Disputes that the small-claims court or General District
> Court do not have the power to hear.  If there is an appeal from small-claims court
> or General District Court, or if a Dispute changes so that the small-claims court or
> General District Court loses the power to hear it, then the Dispute will only be
> heard by an Arbiter.

(Amended Agreement at 3.)

### B.    Enforceability of the Arbitration Provision

Defendant first argues that the parties "clearly and unmistakably" agreed that an

arbitrator must decide threshold issues of arbitrability.  (Def.'s Mem. at 7-8.)  As such,

Defendant reasons, the Court need not determine whether the Arbitration Provision itself covers

all thirteen counts in Plaintiffs' Complaint, because that gateway determination belongs to an

arbitrator.  (Def.'s Mem. at 7-8.)  Plaintiffs respond by attacking the enforceability of the

Arbitration Provision as a whole (and its delegation clause in particular), advancing four theories

as to why the Court should not enforce the provision.  (Pls.' Mem. at 7-11.)  Specifically,

Plaintiffs contend that:  (1) Defendant fraudulently induced the Arbitration Provision; (2) the

Arbitration Provision lacks mutuality; (3) the Arbitration Provision proves illusory, as evidenced

by Defendant's decision to unilaterally amend the Arbitration Provision in 2020; and, (4)

Defendant waived any right to enforce the Arbitration Provision by consistently pursuing

litigation in General District Court.  (Pls.' Mem. at 10-11.)  In response, Defendant

9

acknowledges that "[b]ecause Plaintiffs contend the delegation provision suffers from the same alleged defects as the Arbitration Clause, the Court must determine whether a valid delegation provision exists, and it may consider the arguments lodged against the Arbitration Clause as a whole in making this determination." (Def.'s Reply at 3 (citing 9 U.S.C. § 2; *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 291-92 (4th Cir. 2020)).) As such, the parties appear to agree that the language of the Arbitration Provision captures the claims at issue here, that Plaintiffs have called into question the Provision's enforceability, and accordingly that the Court must determine whether the Arbitration Provision remains enforceable. (Agreement at 5 ("In this Clause, the word 'Disputes' has the broadest possible meaning . . . It includes claims related to setting aside this Clause.").) Accordingly, Defendant has met its initial burden to show that the Arbitration Provision applies. *Gibbs*, 421 F. Supp. 3d at 399 (citing *Hancock*, 701 F.3d at 1261). Given as much, the Court turns to an analysis of whether Plaintiffs have met their burden to present a genuine dispute of fact respecting the enforceability of the Arbitration Provision.

### 1. *Plaintiffs Have Not Shown that Defendant Fraudulently Induced the Arbitration Provision.*

As mentioned, Plaintiffs first attack the Arbitration Provision on the grounds that it resulted from Defendant's fraudulent inducement. On that front, Plaintiffs argue that Defendant never intended to honor the Arbitration Provision. (Pls.' Mem. at 12-16.) More specifically, Plaintiffs maintain that Defendant represented that it would not pursue litigation against Plaintiffs in General District Court, and yet did so anyway. (Pls.' Mem. at 13 (citing Agreement at 5).) In essence, Plaintiffs differentiate between Small Claims Court and General District Court and posit that Defendant's decision to repeatedly sue (some of the) Plaintiffs in General District Court evinces Defendant's intent never to honor the Arbitration Provision. (Pl.'s Mem. at 12-16.)

10

Defendant responds by arguing that Plaintiffs have not shown either a material misrepresentation of fact or reliance, which constitute necessary elements of a fraudulent inducement claim. (Def.'s Reply at 4-12.) Specifically, Defendant points out that the Arbitration Provision allows both parties to bring certain disputes in small-claims court, which (according to Defendant's interpretation of the Provision), includes General District Court. (Def.'s Reply at 8.) Defendant emphasizes that Plaintiffs have not identified any oral or written representation from Defendant in which it agreed that it would not pursue claims in General District Court. (Def.'s Reply at 8.) In Defendant's view, "[a]t most, the record establishes that the parties disagree on the meaning of 'small-claims court.'" (Def.'s Reply at 8.) The Court agrees with Defendant.

To state a claim for fraud under Virginia law,[5] Plaintiffs must show: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly,[6] (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Richmond Metro. Auth. v. McDevitt St. Bovis*, 507 S.E.2d 344, 346 (Va. 1998). Critically, fraud may exist in a contractual setting only when the defendant harbored an intent not to perform the contract at the time of contracting. *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988) (citing *Colonial Ford Truck Sales v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985)). "The promisor's intention — his state of mind — is a matter of fact. When he makes the promise,

---

[5]     The Agreement contains a choice-of-law clause that selects Virginia law. (Agreement at 4.) The parties agree that Virginia law applies. (Pls.' Mem. at 12; Def.'s Mem. at 8.)

[6]     The intent element varies depending on which type of fraud the plaintiff asserts. *Richmond Metro. Auth.*, 507 S.E.2d at 346-47. Specifically, a plaintiff asserting actual fraud must show that the defendant made the false representation intentionally and knowingly. *Id.* For constructive fraud, a plaintiff must only show an innocent or negligent false representation. *Id.* This distinction proves immaterial here, however, in light of the Court's findings on the false representation and reliance elements.

intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud." *Id.* (citing *Colonial Ford Truck Sales*, 325 S.E.2d at 94.)

Here, Plaintiffs identify the statement "You, related third parties, and we, waive the right to go to court," as the operative false representation.[7] (Pls.' Mem. at 13 (citing Agreement at 5).) Yet, Defendant argues that the Arbitration Provision expressly allows both parties to bring certain disputes in a small-claims court. (Def.'s Reply at 8.) Indeed, the pre-2020 Arbitration Provision included a clause that permitted each party "to go to small-claims court if the small-claims court has the power to hear the Dispute." (Agreement at 5-6.) As such, the Arbitration Provision makes plain that Defendant did not falsely represent that the parties could never go to court. At bottom, then, the Court must determine whether Defendant's election to pursue claims in General District Court constitutes circumstantial evidence of fraud, such that Plaintiffs have met their burden to place in genuine dispute the Arbitration Provision's enforceability. *Flip Mortg. Corp.*, 841 F.2d at 537 ("Circumstantial evidence is not only sufficient, but in most cases [of fraud] is the only proof that can be adduced.") (internal quotation marks and citation omitted).

On that front, relevant caselaw persuades the Court that Defendant's pursuit of claims in General District Court does not *ipso facto* establish the requisite showing of fraud.[8] To begin,

---

[7]     Notably, this statement does not represent that Defendant "won't sue [Plaintiffs] in General District Court." Instead, the statement expresses that both parties "waive the right to go to court."

[8]     The Court gives no weight to the Assurance of Voluntary Compliance and related documents attached to Plaintiff's Opposition. (Pls.' Mem., Ex. A (ECF No. 26-1).) The Assurance makes clear that it "does not constitute an admission by Advance Financial of any fact or of a violation of any state or federal law, rule or regulation." (Pls.' Mem., Ex. A. at 30.) Indeed, Defendant denied "any wrongdoing or liability" and entered into the Assurance "for

12

the court in *Hooters of Am. v. Phillips* analyzed a claim of fraudulent inducement in the context of a motion to compel arbitration. 39 F. Supp. 2d 582, 606-07 (D.S.C. 1998). There, Hooters attempted to preemptively compel an employee to arbitrate her Title VII claims. *Id.* at 588. Among other challenges, the employee argued that Hooters had fraudulently induced her to sign the arbitration agreement. *Id.* at 596-97. Specifically, the employee argued that Hooters rushed the roll out of the agreement in a chaotic atmosphere and intentionally withheld the rules that would govern an arbitration proceeding. *Id.* at 596-97. Moreover, the employee pointed to a general manager's characterization of the arbitration process — which he characterized as fair and akin to going to court — as evidence of a false representation of material fact. *Id.* at 606-07.

The court rejected the employee's fraudulent inducement argument. *Id.* at 607. In so doing, the court held that the employee failed to show that the general manager knew his statements were false. *Id.* Instead, the employee merely showed that the manager's statements constituted "nonactionable opinion statements" reflecting the manager's own (even if uneducated) view of the arbitration agreement. *Id.*

Here, Plaintiffs base their fraudulent inducement argument on Defendant's decision to file claims in General District Court — as opposed to Small Claims Court. To that end, Plaintiffs insist that the two forums differ in significant ways, and then proceed to delineate those distinctions as set forth under the Virginia Code. (Pls.' Mem. at 13-14.) But whether the Virginia Code treats General District Court differently than Small Claims Court does not constitute the dispositive question for purposes of fraudulent inducement analysis. Instead, the question turns on whether Defendant falsely represented to Plaintiffs that it would not sue them

---

settlement purposes only." (Pls.' Mem., Ex. A at 30.) Accordingly, the Assurance at most represents the Commonwealth of Virginia's litigation position.

in General District Court. And, because the pre-2020 Arbitration Provision expressly allows

both parties to file claims in a "small-claims court," such false representation must flow from

Defendant's interpretation of that language to include General District Court.

Thus, Plaintiffs' fraudulent inducement argument hinges on their ability to transform

Defendant's interpretation of the "small-claims court" language into an affirmative — and false

— representation of fact. However, the parties' legal disagreement over the meaning of "small-

claims court" can hardly rise to the level of fraud. Indeed, the Fourth Circuit and other courts

often employ "small-claims" language when describing Virginia's General District Courts,

notwithstanding the technical distinctions of the Virginia Code. *See, e.g., Souter v. Equifax*

*Info. Servs., LLC*, 498 F. App'x 260, 262 (4th Cir. 2012) ("Each county and independent city [in

Virginia] has a general district court with jurisdiction over small claims. . . ."); *Stinnie v.*

*Holcomb*, 2017 WL 963234, at *4 n.6 (W.D. Va. Mar. 13, 2017) ("general district court operates

largely as a small claims and traffic offense court, whereas circuit courts are the forum for larger

civil claims, criminal prosecutions, and *de novo* appeals from rulings of the general district

courts."). Additionally, Black's Law Dictionary provides the following definition of "small-

claims court": "[a] court that informally and expeditiously adjudicates claims that seek damages

below a specified monetary amount, usually claims to collect small accounts or debts." *Black's*

*Law Dictionary* (11th ed. 2019).

Moreover, as Plaintiffs point out, the "small-claims court" language in the Arbitration

Provision appears to stem from requirements imposed by the two national arbitration

organizations — i.e., the American Arbitration Association ("AAA") and JAMS. (Pls.' Mem. at

3, Exs. B, D (ECF Nos. 26-2, 26-4).) Specifically, both organizations require that an arbitration

provision include an avenue for the parties to litigate in a "small-claims court." (Pls.' Mem. at 4,

14

Ex. B at 3 (citing the JAMS minimum standards for arbitration procedures: "no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction."); Pls.' Mem. at 4, Ex. D at R-9 (citing AAA's rule that "If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration.").) Given that AAA and JAMS did not devise their requirements specifically for Virginia, the "small-claims court" language that Defendant apparently imported from the two groups does not account for the nuances between Virginia's General District Courts and its Small Claims Courts. Instead, the language proves focused on the defining feature of "small-claims courts" generally — i.e., the limited nature of their jurisdiction.

Accordingly, it appears clear that lawyers, courts, lexicographers and the two national arbitration organizations broadly use the term "small-claims court" to refer to courts of limited jurisdiction. And, of course, Virginia's General District Courts share that characteristic, generally having the power to hear civil cases where the amount in controversy does not exceed $25,000.00.[9] Virginia Code § 16.1-77(1). As such, the Court holds that Defendant's interpretation of the term "small-claims court" to include General District Court did not constitute a false representation of material fact.

The Court pauses to note that, although the Court holds that Defendant's interpretation of the "small-claims court" language did not rise to the level of fraud, the Court nonetheless believes that, in this specific context, the "small-claims court" language did not actually encompass Virginia's General District Courts. Critically, a lawyer cannot represent a party in

---

[9]    Moreover, Virginia's General District Courts and Small Claims Courts share concurrent jurisdiction for claims not exceeding $5,000.00. Virginia Code § 16.1-122.2.

Small Claims Court, but may do so in General District Court.  Virginia Code § 16.1-122.4.[10]

However, as explained above, the fraudulent inducement analysis turns on whether Defendant

made a false representation of material fact, not on whether the Arbitration Provision actually

permitted the parties to litigate in General District Court.  And, although the Court disagrees with

Defendant's position regarding whether the term "small-claims court" included the General

District Court in this context, Defendant's view was not unreasonable, thereby further

undermining Plaintiff's assertions of fraud.

Returning to the fraudulent inducement analysis, Plaintiffs have not provided the kind of

evidence that Virginia courts generally require to support a showing of fraud.  Specifically,

decisional caselaw establishes that a showing of fraudulent inducement requires evidence of

fraud either before or at the time of contracting, and apart from the mere breach of a contractual

obligation.  For example, in *Richmond Metro. Auth. v. McDevitt St. Bovis*, the Richmond

Metropolitan Authority ("plaintiff") entered into a contract with the defendant for construction of

the Diamond Baseball Stadium.  507 S.E.2d at 345.  The contract called for the defendant to

inject grout into certain structures for the sake of ensuring the Diamond's structural integrity.  *Id.*

After the defendant injected the grout through protruding grout tubes, the contract required the

defendant to flush the tubes with the surrounding surface and seal them.  *Id.*  During

construction, the defendant submitted to the plaintiff multiple applications for payment that

included sworn statements averring that construction had taken place in accordance with the

---

[10]     The disparity between the parties in terms of resources and sophistication renders the
right to utilize counsel in the General District Court impactful in this context, because Defendant,
as a sophisticated financial institution, possessed the financial resources and capabilities to
procure counsel to litigate repeatedly in the General District Court, while Plaintiffs are
individuals lacking in financial resources.  *See Rowland*, 2021 WL 1287563, at *4 (noting the
difference in the sophistication of the parties).

contract's design criteria. *Id.* However, following construction, the plaintiff discovered that the defendant failed to inject grout into the structures. *Id.* More troubling, the defendant had apparently sealed empty tube openings with grout, thus giving the false impression that the structures had indeed been filled. *Id.* According to the plaintiff, the defendant's failure to follow the contract specifications rendered the Diamond structurally impaired. *Id.* at 345-46.

On review, the Supreme Court of Virginia affirmed judgment for the defendant, finding that although Defendant "misrepresented its compliance with the design criteria," such noncompliance did not rise to the level of actual fraud. *Id.* at 347. The court observed that the defendant's misconduct either related solely to breaches of contractual obligations or otherwise took place after the parties entered into the contract. *Id.* at 347-48. Because "[n]othing in the record suggests that [the defendant] did not intend to fulfill its contractual duties at the time it entered into the [contract] with [the plaintiff]," the plaintiff failed to state a claim for fraud in the inducement. *Id.* at 348.

In contrast, the court did find evidence of fraudulent inducement in *Abi-Najm v. Concord Condominium, LLC*, 699 S.E.2d 483, 490 (Va. 2010). In that case, purchasers of condominiums ("plaintiffs") entered into a contract with the defendant that provided that the defendant would use a certain type of hardwood for the flooring of each condominium. *Id.* at 485. Instead of the specified hardwood, however, defendant delivered "prefabricated engineered hardwood." *Id.* The plaintiffs sued, alleging in part that the defendant knowingly misrepresented the quality of the flooring and that the plaintiffs relied on such misrepresentations when entering into the contracts. *Id.* at 486. In reversing the trial court's decision to sustain the defendant's demurrers, the court distinguished cases like *Richmond Metro.* on the grounds that "the [plaintiffs] alleged that [the defendant] made misrepresentations of the flooring it promised

17

to install 'with the present intention not to perform' its obligations.  The fraud alleged by the [plaintiffs] was perpetrated by [the defendant] *before* a contract between the two parties came into existence, therefore it cannot logically follow that the duty [the defendant] allegedly breached was one that finds its source in the Contracts." *Id.* at 490 (internal citation omitted).

The guideposts established by *Richmond Metro.* and *Abi-Najm* prove instructive here. Specifically, in *Richmond Metro.*, the court found no evidence of fraud based on the absence of pre-contract misrepresentations that could have induced the plaintiff into entering a contract that the plaintiff otherwise would not have.  *Richmond Metro.*, 507 S.E.2d at 348.  Conversely, the court in *Abi-Najm* allowed the plaintiffs to proceed past demurrer where they alleged pre-contract misrepresentations on which they relied when entering into the contracts at issue.  *Abi-Najm*, 699 S.E.2d at 490.  The allegations here prove more like those in *Richmond Metro.* than *Abi-Najm.*  Indeed, the gravamen of Plaintiffs' fraudulent inducement claim rests on Defendant's conduct *after* the parties had entered into the Agreements.  (Pls.' Mem. at 13 ("[The Arbitration Provision] states 'You, related other parties, and we, waive the right to go to court.  And yet Defendant repeatedly went to court." (citing Agreement at 5).)  Otherwise stated, Plaintiffs rely on Defendant's (arguable) breaches of the Agreement in advancing their claim for fraudulent inducement.  Yet, as the Supreme Court of Virginia has made clear, the essence of a fraudulent *inducement* claim is that the defendant made misrepresentations either before or at the time of contracting to *induce* the plaintiff into entering a contract.  Accordingly, the Court finds that Plaintiffs have not presented the kind of evidence that would warrant a finding of fraudulent inducement under Virginia law.

Finally, Plaintiffs also fail to introduce evidence of reliance.  As mentioned above, reliance constitutes a necessary element of fraud.  *Richmond Metro.*, 507 S.E.2d at 346; *Abi-*

*Najm*, 699 S.E.2d at 490 (finding that plaintiffs adequately alleged reliance where they "alleged that [the defendant] 'knew or reasonably should have known that its disclosure of [the actual flooring material] would have caused the [plaintiffs] to reconsider or renegotiate the [c]ontracts.'"). Here, Plaintiffs must present evidence of a causal nexus between Defendant's alleged misrepresentation and their decisions to enter into the Agreements. Otherwise stated, Plaintiffs must show that they would have reconsidered, renegotiated, or not entered into the Agreements had they known that Defendant might sue them in General District Court rather than Small Claims Court. Yet, the record stands devoid of any such evidence. For example, Plaintiffs provided affidavits from several named Plaintiffs in this lawsuit. (Pls.' Mem., Ex. K (ECF No. 26-11).) In none of those affidavits does a named Plaintiff attest that they relied on Defendant's alleged misrepresentation when deciding to enter into the Agreements. (*See generally*, Pls.' Mem., Ex. K.) As such, Plaintiffs have not presented evidence of reliance to sustain a claim of fraudulent inducement.

For the reasons set forth above, the Court holds that Plaintiffs have not shown that Defendant fraudulently induced them into signing the Arbitration Provision.

### 2. *Plaintiffs Are Not Entitled to an Evidentiary Hearing or Discovery.*

Plaintiffs claim that they stand entitled to an evidentiary hearing, preceded by discovery, to determine whether Defendant fraudulently induced the Agreements. (Pls.' Mem. at 11-12.) To that end, Plaintiffs maintain that they "have presented evidence that Defendant never intended to follow its own arbitration agreement," and, because that "fact is fundamental to the fraud issue," the Court should conduct an evidentiary hearing. (Pls.' Mem. at 12.) Defendant argues that an evidentiary hearing proves unwarranted given the absence of any evidence of fraud. (Def.'s Reply at 7.) In Defendant's view, discovery and an evidentiary hearing would constitute

a circumvention of the Arbitration Provision based merely on the parties' different interpretations of the term "small-claims court." (Def.'s Reply at 12.) The Court agrees with Defendant.

First, for the reasons explained above, the Court rejects Plaintiffs' argument that they have introduced evidence showing that Defendant never intended to honor the Arbitration Provision. Instead, Plaintiffs have shown only that the parties have different opinions with respect to how broadly to construe the term "small-claims court."

Next, Plaintiffs have not shown that the FAA entitles them to discovery or an evidentiary hearing. "The FAA provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Gordon v. TBC Retail Group, Inc.*, 2016 WL 4247738, at *11 (D.S.C. Aug. 11, 2016) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4)); *Yancey v. Equifax Info. Servs.*, LLC, 2019 WL 4257201, at *3 (E.D. Va. June 12, 2019). The limited allowance for discovery results from "[t]he purpose of the FAA" which "is to 'move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22).

In *Yancey*, this Court ordered a limited evidentiary hearing on the issue of whether the plaintiff had actually signed the arbitration agreement. *Yancey*, 2019 WL 4257201, at *1. The defendant had moved to compel arbitration, but the plaintiff argued that someone had stolen her identity and signed the arbitration agreement without her knowledge. *Id.* at *1. Citing the Fourth Circuit's opinion in *Gregory v. Interstate/Johnson Lane Corp.*, this Court determined a hearing appropriate based on a dispute "over the very existence of the agreement to arbitrate."

20

188 F.3d 501, at *7 (4th Cir. 1999) (unpublished).  In short, because arbitration agreements are creatures of contract law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at *2 (internal quotation marks and citation omitted); *see also Rowland*, 2021 WL 1287563, at *4 (finding no meeting of the minds as to arbitration).

Here, Plaintiffs do not dispute that they signed the Agreements.  Instead, they argue that the Arbitration Provision within the Agreements proves unenforceable because of Defendant's fraudulent inducement.  Thus, the parties here do not have a dispute "over the very existence of the agreement to arbitrate," nor is the "making of the arbitration agreement" at issue.  Thus, neither the FAA nor applicable caselaw convince the Court that Plaintiffs have shown entitlement to an evidentiary hearing.  In addition, Plaintiffs fail to identify any specific evidence that they believe will come to light should the Court allow discovery.  (Pls.' Mem. at 11-12.) Indeed, it appears to the Court that Plaintiffs should already possess the necessary evidence to make out their claim of fraudulent inducement, given that such claim would arise from Defendant's alleged misrepresentations *to the Plaintiffs*.  Moreover, as discussed above, Plaintiffs submitted affidavits that lack evidence meeting the elements of fraud, which evidence the affiants would necessarily have (specifically, whether they relied on Defendant's alleged misrepresentation when entering into the Agreements).

Accordingly, the Court finds that discovery and an evidentiary hearing prove unwarranted.

### 3.    *Defendant Has Not Waived its Right to Demand Arbitration.*

Defendant's decision to pursue individual collection actions in General District Court did not constitute a permanent waiver of Defendant's right to enforce the Arbitration Provision for future, independent actions.  As mentioned, the Court finds that, in this specific context, the

General District Court operates as a distinct entity separate from Small Claims Court. As such, by pursuing claims in General District Court, Defendant acted contrary to its intention to waive its right to seek judicial remedies (at least to the extent that Defendant sued certain plaintiffs in General District Court before the January 2020 Amendment). Given as much, Defendant arguably invoked the litigation machinery of the General District Courts. Still, for the reasons explained below, the Court finds that Plaintiffs have not met their heavy burden to demonstrate waiver under the relevant legal framework.

The doctrine of waiver in the context of arbitration centers on whether a party has "so substantially utilize[d] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."[11] *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001). The party opposing arbitration "bears the heavy burden of proving waiver." *Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236 F. Supp. 2d 575, 584 (E.D. Va. 2002) (internal quotation marks and citation omitted). Generally, to constitute waiver, the party's prior use of litigation must relate to the same claims that the party now seeks to arbitrate. *MicroStrategy*, 268 F.3d at 250; *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999) ("[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate.").

---

[11]   In the context of the FAA, courts often use the terms "waiver" and "default" interchangeably. *See MicroStrategy*, 268 F.3d at 249 (citing 9 U.S.C. § 3); *Hudson v. Citibank (South Dakota) NA*, 387 P.3d 42, 46-48 (Alaska 2016). Thus, when the Court speaks of "waiver" here, it refers to the principles of "default" that originate under the FAA and that the Fourth Circuit enunciated in *MicroStrategy*. 268 F.3d at 249 ("Although this principle of 'default' is akin to waiver, the circumstances giving rise to statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.") (quoting *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)).

In *MicroStrategy*, the plaintiff brought suit against her employer (the "defendant"), alleging that the defendant retaliated against her after she filed complaints with the Equal Employment Opportunity Commission ("EEOC"). *MicroStrategy*, 268 F.3d at 246. Specifically, the plaintiff filed a charge with the EEOC alleging age and sex discrimination, and soon thereafter the defendant placed her on paid administrative leave. *Id.* Two days after it suspended the plaintiff, the defendant filed suit in federal district court against her, seeking a declaration that it did not violate the Fair Labor Standards Act by placing the plaintiff on paid leave and that it would not violate the act by terminating her. *Id.* at 247. The defendant further sought to hold the plaintiff liable for stealing and disclosing trade secrets. *Id.* The district court dismissed the action for want of jurisdiction, prompting the defendant to file suit in Virginia state court three days later. *Id.* Then, the plaintiff filed a second charge with the EEOC and, after the EEOC issued her a right-to-sue letter, sent the defendant a courtesy copy of the lawsuit she intended to file. *Id.* In response, the defendant filed in federal district court a third action against the plaintiff and her attorney. *Id.* In that action, the defendant sought a declaration that its conduct did not violate various federal laws and reasserted its state-law claims. *Id.* The next day, the plaintiff filed her action against the defendant. *Id.* Ultimately, the district court consolidated the two federal actions, and the defendant moved to compel arbitration based on an arbitration agreement that the plaintiff had signed during her employment. *Id.* at 248.

In reversing the district court's finding that the defendant had waived its right to arbitration by virtue of its "remarkably aggressive" litigation strategy, the Fourth Circuit held that the defendant's conduct in the prior actions could not support a finding of waiver. *Id.* at 250-51. Specifically, the court emphasized that the defendant's "conduct in the prior actions . . . was in connection with its state-law claims which sought to prevent [the plaintiff] from

disclosing trade secrets or other confidential information." *Id.* at 250.  Indeed, although the defendant's request for declaratory relief in the prior actions involved "the same legal and factual issues underlying [the plaintiff's] claims against [the defendant]" "the bulk of the activity in the prior actions was directed toward the state-law claims, and no decision on the merits of the declaratory relief claims was ever made in any of the actions." *Id.*  Thus, "because the prior actions were primarily directed to claims unrelated to those asserted by [the plaintiff], the expense and effort associated with those claims cannot be used in support" of a finding of waiver. *Id.* at 251.

Here, Plaintiffs raise thirteen counts that range from alleged violations of the Virginia Consumer Protection Act to state law conversion.  Those counts raise distinct factual and legal issues apart from the breach of contract lawsuits that Defendant litigated in the General District Courts.  For example, in Counts Six and Seven, Plaintiffs raise claims for usury.  (Compl. ¶¶ 208-38.)  Arguably, these Counts represent the most closely related claims to the breach of contract actions that Defendant brought in the General District Courts.  Specifically, Plaintiffs may have (or could have) argued in General District Court that they did not repay the loans, because of their usurious interest rate.  Yet, even if Plaintiffs had raised those arguments, Defendant's litigation activity in those prior actions was directed at the collection of outstanding loan balances.  Thus, to the extent that Defendant "substantially utilized the litigation machinery" of the General District Courts, it did so to litigate the fact and extent of an unpaid debt.  Here, however, if the Court allowed the Usury Counts to proceed on the merits, the parties would primarily litigate whether the loans fell within the open-ended credit exception found in Virginia Code § 6.2-312.  (Compl. ¶¶ 220, 234 (alleging that the loans did not qualify as open-ended credit).)  And, Plaintiffs present no evidence that a General District Court rendered a

24

decision on the merits of that argument.  Accordingly, Defendant's "prior [GDC] actions were primarily directed to claims unrelated to those asserted by [Plaintiffs]," such that "the expense and effort associated with those claims cannot be used in support of the argument that" Defendant waived its right to arbitrate the claims that Plaintiffs now raise.  *MicroStrategy*, 268 F.3d at 251.

Moreover, as previously noted, Defendant's view that the term "small-claims court" encompassed the General District Court was reasonable, albeit incorrect in this context.  Consequently, Defendant exercised its right to litigate in the General District Court as it then believed (reasonably) to exist.  Such conduct cannot be construed as a waiver.

Further, Plaintiffs fail to show actual prejudice.  *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 95 (4th Cir. 1996) (explaining that the prejudice analysis focuses on the extent of the delay and the moving party's trial-oriented activity).  Essentially, Plaintiffs emphasize that Defendant may use the state-court judgments against them in an arbitration proceeding and otherwise highlight the harm allegedly suffered as a result of these judgments. (Pls.' Mem. at 22-26.)  However, these arguments do not establish actual prejudice within the meaning of controlling Fourth Circuit precedent.

First, the Court observes that a delay in demanding arbitration, without an additional showing of prejudice, will not constitute waiver.  *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703 (4th Cir. 2012).  Instead, Plaintiffs must show that they suffered prejudice *as a result* of Defendant's delay in moving to compel arbitration.  *Id.*  Here, the instant Motion to Compel Arbitration represents the first substantive motion filed in this case.  As such, Defendant has simply not delayed in demanding arbitration.  Additionally, even if the Court measured the delay from the earliest General District Court action (which Defendant filed

25

against Turpin on August 16, 2018), Plaintiffs have not shown that the delay in demanding arbitration caused them actual prejudice. Specifically, Plaintiffs have not shown that they have expended resources "specifically in response to motions filed by the party who later seeks arbitration." *Rota-McLarty*, 700 F.3d at 703. Indeed, Plaintiffs complain broadly about the negative effects of the state-court judgments, but do not show that Defendant lulled them into engaging in significant litigation activity by virtue of delaying its demand to arbitrate. Thus, the genre of prejudice Plaintiffs complain of here does not prove relevant under the applicable analysis.

Second, the Court must consider the extent to which Defendant's litigation activities prejudiced Plaintiffs in their advancement of these specific claims. *Id.* at 704 (analyzing the extent to which the defendant's litigation activities would disadvantage the plaintiff in subsequent arbitration). Again, Plaintiffs fail to tether their "discussion of [Defendant's] litigation activities" to the relevant prejudice analysis. *Id.* As noted, Plaintiffs allege that Defendant will use the state-court judgments against them in an arbitration proceeding. (Pls.' Mem. at 22.) Yet, Plaintiffs provide no evidentiary support for that contention. Additionally, because the state-court judgments did not adjudicate the same factual and legal issues that Plaintiffs now raise, those judgments likely cannot defeat Plaintiffs' claims should Plaintiffs pursue them in arbitration. *See Raley v. Haider*, 747 S.E.2d 812, 815 (Va. 2013) (articulating the elements of res judicata under Virginia law, to include that the claim for relief must have been "decided on the merits by a final judgment."). Moreover, Defendant never actually sued several of the Plaintiffs, and many claims that Plaintiffs raise here have no connection whatsoever to the state-court judgments. (*See, e.g.*, Compl. ¶¶ 280-303, Count Ten (raising a claim for violations of the Virginia Telephone Privacy Protection Act).) And finally, the generalized negative impact

26

Case 3:20-cv-00551-DJN   Document 37   Filed 04/08/21   Page 27 of 30 PageID# 1411

that the state-court judgments have on certain Plaintiffs does not speak to any prejudice that they suffered as a result of Defendant's litigation activity *in this case*.  As explained above, Defendant's litigation activity proves relevant only to the extent that the activity sought to litigate the same legal and factual issues that Plaintiffs now raise.  *MicroStrategy*, 268 F.3d at 250-51.  Here, Defendant has undertaken virtually no litigation activity directed toward Plaintiffs' claims.  Indeed, the parties have not yet even begun exchanging discovery, as the Court stayed discovery in this action pending decision on the instant Motion.  (ECF No. 35.)

Accordingly, Plaintiffs have not carried their burden to show waiver.

### 4.    *Plaintiffs' Remaining Arguments Do Not Invalidate the Arbitration Provision.*

As mentioned, Plaintiffs lodge two additional attacks against the Arbitration Provision. To start, Plaintiffs argue that the Arbitration Provision lacks mutuality, because Defendant "remained unbound by the [Arbitration Provision]" "while consumers are barred from bringing any case outside Small Claims Court."  (Pls.' Mem. at 16-17.)  Next, Plaintiffs insist that the Arbitration Provision proves illusory, as evidenced by Defendant's ability to unilaterally change its terms.  (Pls.' Mem. at 17-19.)  On this score, Plaintiffs point to the January 2020 amendment, in which Defendant sent a notice to borrowers amending the Arbitration Provision to expressly allow the parties to litigate claims in General District Court.  (Pls.' Mem. at 19.)  The Court rejects both of these arguments.

First, the Arbitration Provision does not lack mutuality, because it binds both parties to its terms.  (Agreement at 5-6 ("*Each party* has the right to arbitrate, or to go to small-claims courts if the small-claims court has the power to hear the Dispute.") (emphasis added).)  Thus, the Arbitration Provision plainly granted to both parties the right to arbitrate or go to small-claims court.  The fact that the parties differ in their interpretation as to the meaning of "small-claims

27

court" does not impact the mutuality evidenced by the plain language of the Agreement. Moreover, Plaintiffs present no evidence that they tried to arbitrate the state-court breach of contract claims, but that Defendant refused. As such, Plaintiffs cannot credibly argue that Defendant "remained unbound by the [Arbitration Provision]," when Plaintiffs have not put forth any evidence that they even attempted to enforce it. Additionally, the cases on which Plaintiffs rely deal with arbitration clauses that expressly bound only one party. *See, e.g.*, *Noohi v. Toll Bros.*, 708 F.3d 599, 609-11 (4th Cir. 2013) (invalidating arbitration agreement, because it "unambiguously binds only the [plaintiffs]."); *Howard v. King's Crossing*, 264 F. App'x 345, at *2 (4th Cir. 2008) (invalidating arbitration agreement where the plaintiff "agreed to arbitrate her disputes against [the defendants] and to waive any right to proceed in a court of law," but the Defendants "made no corresponding promise. Rather, they reserved the right to seek specific performance of the agreement in any court of competent jurisdiction and/or to sue [the plaintiff] for damages.").

Second, the mere fact that Defendant amended the Arbitration Provision does not establish the Provision's illusoriness. The Agreement contains an amendment procedure that allows Defendant to change any term of the Agreement with 45 days prior notice. (Agreement at 4; *see also* Pls.' Mem., Ex. F ("Notice of Amendment") (ECF No. 26-6) (stating that the amendment takes effect on January 30, 2020, after the date on which Defendant sent the e-mail).) After Defendant notifies a borrower of a change, the borrower then has 45 days to opt-out of the Agreement. (Agreement at 4.) If the borrower does so, Defendant automatically closes the account. (Agreement at 4.) Accordingly, Defendant did not possess unlimited discretion to amend the Agreement and bind Plaintiffs to that amendment. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 91 n.5 (4th Cir. 2005) (rejecting argument that unilateral modification

rendered arbitration agreement illusory, because the employer's discretion to amend the agreement "[was] limited to prospective disputes and by specific notice requirements."); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (finding arbitration agreement not illusory where employer's right to alter the material aspects of the agreement took effect "only after putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment."); *see also* Restatement (Second) of Contracts § 2, cmt. e ("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise."). Here, the amendment process allowed Plaintiffs 45 days to opt-out of any proposed change to the Agreement, thus limiting Defendant's ability to bind Plaintiffs to an amendment. As such, the Agreements do not qualify as illusory.

For all these reasons, the Court will enforce the Arbitration Provision.[12]

## C.      Dismissal Proves the Appropriate Remedy

Because the Arbitration Provision captures Plaintiffs' claims, the Court must, at a minimum, stay the litigation and compel arbitration. 9 U.S.C. §§ 3, 4. However, when all the claims in an action prove subject to arbitration, dismissal constitutes the appropriate remedy. *Choice of Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Accordingly, the Court GRANTS Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 10.)

---

[12]      In light of the Court's finding that the Arbitration Provision is enforceable, the Court need not reach Plaintiffs' argument regarding the class action waiver. (Pls.' Mem. at 27-30.)

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion (ECF

No. 10), and DISMISSES WITHOUT PREJUDICE Plaintiff's Class Action Complaint (ECF

No. 1).

This case is now CLOSED.

 Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

An appropriate Order shall issue.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date:  April 8, 2021

30